A00A0501. LYONS v. THE STATE.
(535 SE2d 841)

BLACKBURN, Presiding Judge.

In this interlocutory appeal of a DUI prosecution, Nancy L. Lyons challenges the trial court's denial of her motion to suppress the results of field sobriety tests, contending that: (1) an admitted video-tape of the traffic stop unequivocally contradicted the arresting officer's testimony regarding the basis of his suspicions and (2) the arresting officer failed to advise Lyons of her rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), prior to administering the field sobriety tests. Because we cannot say that the trial court was clearly erroneous in its decision to deny Lyons' motion, we must affirm.

When reviewing a trial court's decision on a motion to suppress, this court's responsibility is to ensure that there was a substantial basis for the decision. The evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are

analogous to a jury verdict and will not be disturbed if there is any evidence to support them.

(Citations omitted.) *Morgan v. State*, 195 Ga. App. 732, 735 (3) (394 SE2d 639) (1990). Where controlling facts are not in dispute, however, such as those facts discernible from a videotape, our review is de novo. *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

The record in this case reveals that Officer Jack Moody, a member of the Gwinnett County Police Department's DUI Task Force, stopped Lyons for speeding on the night of March 18, 1998.[1] Moody approached Lyons and asked for her driver's license and proof of insurance. Moody asked Lyons if she had been drinking, and she responded that she had not. Moody then suggested that he might be smelling Lyons' perfume, rather than alcohol, and Lyons told him that she was wearing a new fragrance.

After initially questioning Lyons, Moody returned to his patrol car and filled out a citation for speeding. While writing the ticket, he received a cell phone call from his wife and told her that he was writing a traffic ticket (for speeding) and was almost finished with the traffic stop. He then returned to Lyons' vehicle and told Lyons he was giving her a speeding ticket. Moody then told her that he just wanted to be sure that she had not been drinking before he turned her loose and asked her to perform an alco-sensor test. Lyons asked Moody if she was required to take the test, and Moody advised her that all tests were voluntary. Lyons exercised her right not to take the breath test.

At that point, based on Lyons' refusal to take the alco-sensor test, Moody asked her to step out of the car. He then asked Lyons to perform other field sobriety tests, which Lyons consented to do. The video showing the performance of the field tests has been redacted from the appellate record. Moody testified, however, that Lyons failed these tests and he then arrested her for DUI.

Lyons filed the underlying motion to suppress the results of her field sobriety tests. Although Lyons made numerous motions in the trial court with regard to her stop, including the propriety of a subsequent Intoxilyzer evaluation, the appeal addresses only the trial court's decision not to suppress the results of Lyons' field sobriety tests.

1. Relying heavily on a videotape of the stop, Lyons contends that the evidence failed to show that Moody had the appropriate suspicion to investigate her for a DUI violation after pulling her over for speeding. We are constrained by our standard of review to disagree.

---

[1] Using radar, Moody clocked Lyons' speed at 78 mph in a 55-mph zone.

At the outset, we point out that it is undisputed that Moody properly pulled Lyons over for speeding; therefore, the efficacy of the initial stop is not in question here. The only question is whether there were articulable facts supporting Moody's further investigation for DUI.

In general, investigative stops of vehicles are analogous to *Terry* stops. See *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

> While a reasonable investigative stop does not offend against the Fourth Amendment, a *Terry* stop is subject to strict boundaries regarding duration, intent, and scope. Such a stop has been described by this court as a brief stop, limited in time to that minimally necessary to investigate the allegation invoking suspicion, and limited in scope to identification and limited questioning reasonably related to the circumstances that justified the initiation of the momentary stop.

(Citations and punctuation omitted.) *Smith v. State*, 216 Ga. App. 453, 454 (2) (454 SE2d 635) (1995). In addition, "[a]n officer who questions and detains a suspect for other reasons [than those precipitating the initial stop] exceeds the scope of permissible investigation unless he has 'reasonable suspicion' of other criminal activity." *State v. Blair*, 239 Ga. App. 340, 341 (521 SE2d 380) (1999). See *Simmons v. State*, 223 Ga. App. 781, 782 (2) (479 SE2d 123) (1996).

In this case, therefore, Moody, who initially stopped Lyons for speeding, could detain Lyons for further questioning regarding DUI only if he had a reasonable suspicion of such criminal activity. *Simmons*, supra. In his testimony, Moody explained that his suspicion that Lyons was drinking arose shortly after he stopped her. He cited as support for his suspicion Lyons' bloodshot eyes, her thick speech, her inability to locate her insurance card, and the odor of an alcoholic beverage on her breath. Moody averred that based on these overt physical clues of possible inebriation, he developed a reasonable articulable suspicion precipitating his request that Lyons perform field sobriety evaluations. Moody did not explain why in view of the facts to which he later testified, he curtailed his investigation and returned to his vehicle to write a speeding ticket. All of those observations had been made prior to Moody terminating his investigation and returning to his vehicle to write a speeding ticket and have a telephone conversation with his wife. Moody's conduct, when he returned to Lyons' car to present her with the speeding ticket, is puzzling. Almost as an afterthought, he said that he just wanted to be sure that she had not been drinking before he turned her loose. Yet

he testified that he had previously determined that her eyes were bloodshot, her voice was thick, that she could not locate her insurance card, and that her breath smelled of an alcoholic beverage, which facts created a suspicion that she was DUI. He also testified, however, that he believed her when she said she had not been drinking after he made these observations and before he concluded his investigation and returned to his vehicle to write Lyons a speeding ticket.

This scenario would have supported a conclusion by the trial court that the officer's testimony was not credible, there was no articulable suspicion, and that the request for the breath test was simply a standard inquiry following a non-DUI traffic stop. Before police officers are authorized to conduct an investigation of citizens for DUI, there must be an articulable suspicion that the driver is driving under the influence. Non-DUI stops cannot be used as a screening device for DUI offenders absent specific facts authorizing such inquiry in each case. Here, the trial court accepted Moody's testimony and denied Lyons' motion to suppress.

Lyons' contention that the videotape reviewed by the trial court and Moody's own testimony belie Moody's account of the stop, though supported by some evidence in the record, does not require a reversal of the trial court's ruling. With regard to Moody's factual account of the stop, Lyons argues that the tape proves that her voice was not thick, as Moody described it. On this point, using the de novo standard of *Vansant*, supra, we agree. Our review of that portion of the videotape during which Officer Moody contends he developed an articulable suspicion of Lyons' intoxication so as to authorize further questioning and a request for field sobriety tests reveals that Lyons spoke clearly when Moody communicated with her.

The videotape, however, does *not* directly contradict Moody's testimony that Lyons' eyes were bloodshot, although one must wonder how he could make that determination looking into a dark car at night, as was the case. This conclusion was reached prior to Lyons exiting her car. There is no visible footage of Lyons' search for her insurance card. On cross-examination, Moody admitted that he simply observed an insurance card which Lyons passed over. He acknowledged that he did not look at the card closely as Lyons thumbed through her documents and that he did not know if the insurance card he saw was for the subject vehicle or if it might have been either an expired card or a card for her husband's car. Nonetheless, on these issues, the trial court's ruling was in part dependent upon Moody's credibility and the weight the trial court put upon the evidence. We must therefore defer to the findings of the trial court, as issues of disputed fact, the veracity of a witness, and the weight of the evidence are within its province.

Finally, Lyons argues that the videotape shows that Moody lacked articulable suspicion that she was driving under the influence of alcohol because, after asking Lyons whether she had been drinking, he postulated on tape that the odor he was smelling might be Lyons' perfume. Moody testified, however, that he had already reached the conclusion that Lyons had been drinking at the time he asked about her perfume and that he was trying to see if she would tell him the truth. The incongruity of this testimony has been previously discussed. This court is not free to substitute its judgment for the trial court's determination that Moody was credible and that he had an articulable basis for the inquiry concerning DUI. See *Cann-Hanson v. State*, 223 Ga. App. 690, 691 (1) (478 SE2d 460) (1996).

Although, pursuant to our standard of review, we affirm the trial court's decision in this case. We must point out, however, that we are nonetheless troubled by what happened here. Moody's testimony is riddled with inconsistencies and mischaracterizations which make his behavior suspect. Moody, himself, testified that he believed Lyons when she told him that she had not been drinking and that it was contrary to his training to wait until after he had filled out a speeding citation to pursue a DUI investigation. Trial courts must closely scrutinize the facts of every case to ensure that reasonable suspicion actually was present at the initiation of the DUI investigation and was not invented after the arrest to cover a scheme of screening routine traffic stops without observing constitutional safeguards.

2. Lyons further contends that the results of Moody's DUI investigation should be suppressed because she was not given her *Miranda* rights prior to the field sobriety tests. We disagree.

> As a general rule, no *Miranda* warnings are required while the investigating officer conducts preliminary questioning or field sobriety tests or advises a defendant of his right to an independent test. But because state law affords greater protection against self-incrimination than the federal constitution, after arrest, *Miranda* warnings must precede questioning during field sobriety tests.

(Citations omitted.) *State v. Warmack*, 230 Ga. App. 157, 158 (495 SE2d 632) (1998). If a defendant is under arrest, the results of field sobriety evaluations will be inadmissible unless the defendant has previously been informed of his *Miranda* rights in accordance with OCGA § 24-9-20 (a). *State v. O'Donnell*, 225 Ga. App. 502, 504 (2) (484 SE2d 313) (1997).

Here, Lyons argues that, at the time Moody asked her to perform

the field sobriety evaluations, she was in custody and her *Miranda* rights were triggered. However,

> "[f]or the proscriptions of *Miranda*[, supra,] to apply, 'a person must be taken into custody or otherwise deprived of his freedom of action in some significant way.' *Lobdell v. State*, 256 Ga. 769, 773 (6) (353 SE2d 799) ((1987)). 'In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but "the ultimate inquiry is simply whether there (was) a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." (Cits.)' *Stansbury v. California*, 511 U. S. 318, 322 (114 SC 1526, 128 LE2d 293) ((1994))." *McConville v. State*, 228 Ga. App. 463, 465 (491 SE2d 900) (1997). "The test for determining whether a person is 'in custody' at a traffic stop is if a reasonable person in the *suspect's* position would have thought the detention would not be temporary. *Berkemer v. McCarty*, 468 U. S. 420, 442 (104 SC 3138, 82 LE2d 317) (1984)." (Emphasis supplied.) *Hughes v. State*, 259 Ga. 227, 228 (378 SE2d 853) (1989); see also *Price v. State*, 269 Ga. 222 (498 SE2d 262) (1998); *State v. O'Donnell*, [supra at 503 (1)].

*State v. Kirbabas*, 232 Ga. App. 474, 475 (502 SE2d 314) (1998). Georgia case law dealing with similar factual circumstances does not support Lyons' argument that a reasonable person in her position would believe that she was under arrest at the point that Moody asked her to step out of her car and perform field sobriety tests. "For seizure of a person 'there must be either the application of physical force, however slight, or, where that is absent, submission to an officer's "show of authority" to restrain the [defendant's] liberty.' " Id. at 477. Lyons agreed to step out of her car and submit to field sobriety tests after she had just refused to perform an alco-sensor test. She had asked if she was required to take the breath test and had been informed that *all* tests were voluntary. Therefore, Lyons had been given explicit notice that her submission to testing was voluntary. Based upon the trial court's acceptance of Moody's testimony as credible, we cannot say that the trial court erred in denying Lyons' motion to suppress.

Contrary to Lyons' arguments, under current Georgia law, Moody's testimony that she was not free to leave does not change this result, for Moody took no overt action which would make Lyons reasonably believe that she was under arrest rather than being the subject of an investigatory stop.

[A]bsent the officer making any statement that would cause a reasonable person to believe that she was under arrest and not temporarily detained during an investigation, the officer's "belief" that probable cause exists to make an arrest does not determine when the arrest is effectuated until the officer overtly acts so that a reasonable person would believe she was under arrest.

*Kirbabas*, supra at 476.

An investigatory stop is not automatically an arrest for *Miranda* purposes simply because an officer is armed. See *Franklin v. State*, 143 Ga. App. 3, 5 (2) (237 SE2d 425) (1977). Here, Lyons had agreed to submit to field sobriety tests, which she understood to be voluntary. She was not therefore under arrest.

*Judgment affirmed. Eldridge and Barnes, JJ., concur.*

DECIDED JUNE 15, 2000 —
RECONSIDERATION DENIED JUNE 28, 2000

*William C. Head*, for appellant.

*Gerald N. Blaney, Jr.*, Solicitor, *Jeffrey P. Kwiatkowski, Emilien O. Loiselle, Jr.*, Assistant Solicitors, for appellee.

