## A01A0769. POLIZZOTTO v. THE STATE.
(547 SE2d 390)

MIKELL, Judge.

Jeffrey Polizzotto was charged with driving under the influence of alcohol ("DUI") to the extent that he was a less safe driver, OCGA § 40-6-391 (a) (1), and "laying drags" in violation of OCGA § 40-6-251. Prior to trial, Polizzotto filed a motion to suppress evidence of his field sobriety evaluations based on alleged *Miranda* violations. The

trial court denied the motion to suppress. At the conclusion of a jury trial, Polizzotto was convicted of both offenses. He appeals, arguing that the trial court erred by denying the motion to suppress, by instructing the jury during the evidentiary phase of the trial, and by improperly charging the jury on the horizontal gaze nystagmus ("HGN") test. We affirm.

Viewed in the light most favorable to the verdict, the evidence shows that at approximately 12:40 a.m. on June 19, 1999, Deputy David Hardwick of the Rockdale County Sheriff's Department observed a vehicle driven by Polizzotto stopped at an intersection. Deputy Hardwick testified that there was smoke coming from the vehicle and that the rear tires were spinning while the vehicle was stopped, causing it to "gyrate." Deputy Hardwick initiated a traffic stop. He approached the vehicle, and Polizzotto began apologizing and mentioning the names of "political persons in the county and in the city," whom he knew, including the city manager of Conyers and a county commissioner of Rockdale County. The deputy noticed the smell of alcohol coming from inside the vehicle. Deputy Hardwick asked the defendant if he had been drinking, and Polizzotto replied that he had consumed "a couple of drinks with dinner."

The officer then administered field sobriety tests. First, while Polizzotto remained in the car, Deputy Hardwick administered the HGN test, during which he observed a "lack of smooth pursuit" in Polizzotto's eyes, which indicated possible impairment. Next, the deputy asked Polizzotto to blow into a portable alco-sensor, and the instrument indicated that the defendant had consumed alcohol. Deputy Hardwick returned to his vehicle to summon his supervisor to the scene, because Polizzotto had dropped the names of several political figures. Deputy Hardwick told his supervisor over the radio that the defendant was "going to be 29," which is a police code for DUI.

After speaking with his supervisor, Deputy Hardwick asked Polizzotto to exit the vehicle for additional field sobriety evaluations. The deputy directed Polizzotto to perform the "one-leg stand" test, during which he observed that Polizzotto swayed, raised his arms, and had some difficulty counting to thirty, which were "clues" that the defendant was an impaired driver. Next, Polizzotto performed the "walk and turn" test. Again, Deputy Hardwick observed clues in Polizzotto's performance that indicated impairment.

Deputy Hardwick testified that based on the field sobriety tests, he formed an opinion that Polizzotto was "an impaired, less safe driver." The deputy placed Polizzotto under arrest and read him the implied consent notice. Polizzotto responded that he would like to speak with an attorney before deciding whether to submit to breath testing, but Deputy Hardwick informed him that he did not have the right to have an attorney present for a breath test. The deputy read

the implied consent notice for a second time, and Polizzotto agreed to submit to the test; however, when they reached the jail, Polizzotto refused to take the test.

1. First, Polizzotto argues that the trial court erred in denying his motion to suppress. He contends that Deputy Hardwick had decided to arrest him at the time the deputy spoke to his supervisor over the radio, and, therefore, evidence of subsequent field sobriety tests should have been excluded because Polizzotto was not notified of his *Miranda* rights. Because the trial court was not clearly erroneous in its decision to deny Polizzotto's motion, we affirm.

It is well settled that when reviewing a trial court's decision regarding a motion to suppress evidence, the appellate court should be guided by three principles with regard to interpretation of the trial court's judgment of the facts:

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citations, punctuation and emphasis omitted.) *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994); *State v. Aguirre*, 229 Ga. App. 736-737 (494 SE2d 576) (1997).

As a general rule, *Miranda* warnings are not required while an investigating officer conducts preliminary questioning or field sobriety tests; however, *after* a DUI suspect is arrested, *Miranda* warnings must precede further field sobriety tests in order for evidence of the results to be admissible. *Harper v. State*, 243 Ga. App. 705-706 (1) (534 SE2d 157) (2000); *State v. O'Donnell*, 225 Ga. App. 502, 504 (2) (484 SE2d 313) (1997); OCGA § 24-9-20 (a).

Polizzotto argues that despite the fact that he had not been formally arrested at the time of his field sobriety tests, he was effectively in custody; therefore, *Miranda* warnings were required. We disagree. In a similar DUI case, *Lyons v. State*, 244 Ga. App. 658 (535 SE2d 841) (2000), we affirmed the trial court's denial of a motion to suppress the results of field sobriety tests and held that

> [i]n determining whether an individual was in custody, a court must examine all of the circumstances surrounding

> the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or restraint . . . of movement of the degree associated with a formal arrest. The test for determining whether a person is in custody at a traffic stop is if a reasonable person in the suspect's position would have thought the detention would not be temporary.

(Citations and punctuation omitted.) Id. at 663 (2). In the case sub judice, as in *Lyons*, the defendant voluntarily submitted to field sobriety evaluations. Deputy Hardwick took no overt action to make Polizzotto reasonably believe that he was under arrest rather than the subject of an investigatory stop.

Furthermore, Polizzotto's contention that Deputy Hardwick had decided to arrest him prior to administering the latter two field sobriety tests does not affect our conclusion.

> Absent the officer making any statement that would cause a reasonable person to believe that she was under arrest and not temporarily detained during an investigation, the officer's "belief" that probable cause exists to make an arrest does not determine when the arrest is effectuated until the officer overtly acts so that a reasonable person would believe she was under arrest.

*Lyons*, supra at 664, citing *State v. Kirbabas*, 232 Ga. App. 474, 475-476 (502 SE2d 314) (1998). Accordingly, the trial court did not err in denying the motion to suppress.

2. Next, Polizzotto argues that the trial court erred by impermissibly instructing the jury during the evidentiary phase of the trial, in violation of OCGA § 17-8-57. We find no harmful error and affirm.

During Polizzotto's testimony, the state asked the court to take up a matter outside the presence of the jury. Polizzotto had just testified that he believed he had the right to have an attorney present for his breath test and, when prompted, had explained the basis for his belief as follows:

> A: At that point in my mind, I'm thinking, he's reading legal stuff [the implied consent notice] to me that I don't completely understand. I want to have an attorney present, and I asked for one.
> Q: What made you think you had the right to have an attorney?
> A: Watch TV you see people, you know, you have the right to a phone call and a right to a lawyer if you're under arrest and in handcuffs. . . . I feel like I've got the right to have an attorney.

Polizzotto had also testified that Deputy Hardwick did not read him his *Miranda* rights. After the jury left the courtroom, the state asked the court to instruct the jury that there is no legal requirement that a DUI suspect be advised of his *Miranda* rights prior to arrest and that a DUI suspect does not have the right to an attorney during breath testing. The court heard from the state and the defense on this issue and then instructed the jury as follows:

> Ladies and gentlemen, before we proceed any further, I have a charge to give you if you'll listen up. A motorist detained pursuant to a traffic stop is not taken into custody for purposes of the *Miranda* warning. Under our laws a police officer can stop a motorist when erratic driving was observed and ask the motorist a modest number of questions and also ask the motorist to perform simple sobriety tests if these procedures involve a short period of time. I charge you that a person suspected of driving under the influence is not entitled to the advice of counsel when conferring with a decision as to whether to submit to a sobriety test under the implied consent law.

Polizzotto does not contend that the court's instruction was an incorrect statement of the law; rather, he argues that the court's giving of the instruction during the evidentiary phase of the trial amounted to an improper comment on Polizzotto's guilt, in violation of OCGA § 17-8-57. That Code section provides that "[i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused."

We conclude that the judge's instruction did not constitute an improper expression of his opinion of the case and, therefore, was not a violation of OCGA § 17-8-57. While it might have been the better practice for the court to give the instruction at issue during the jury charge at the close of the evidence, we cannot determine that the charge as given constituted harmful error, particularly in light of the overwhelming evidence of Polizzotto's guilt.

3. Finally, Polizzotto argues that the court erred in charging the jury on the HGN test. At the close of the trial, the court instructed the jury as follows:

> The horizontal gaze nystagmus or HGN test is based on well known and medically accepted principles that nystagmus can be caused by ingestion of alcohol. The HGN test is an accepted common procedure that has reached a state of verifiable certainty in the scientific community and is admis-

sible as a basis upon which an officer can determine whether a driver was impaired by alcohol.

Polizzotto first argues that the above charge was given in error, because the HGN test produces clues that tend to prove that a person's blood alcohol content is greater than 0.10 grams, rather than proving that a person is impaired and therefore a less safe driver. He bases this contention on Deputy Hardwick's statement, made outside the presence of the jury, that seventy-seven percent of all drivers who have six clues or more during an HGN test have a blood alcohol content of 0.10 grams or more. This argument is without merit.

In *Waits v. State*, 232 Ga. App. 357, 360 (3) (501 SE2d 870) (1998), a similar case involving a defendant charged with DUI to the extent that he was a less safe driver, we held that the exact charge at issue was a correct statement of the law, and that a trial court did not err when it gave that charge. Therefore, we reject Polizzotto's argument that the charge was an incorrect statement of the law.

Polizzotto also argues that the charge on HGN somehow violated OCGA § 17-8-57 as an improper expression of the trial judge's opinion of what had been proved. This precise issue was decided adversely to Polizzotto in *Waits*, where we held that "[t]he charge did not express an opinion, either of [the defendant's] guilt or regarding what had been proved." Id. at 360 (3). Accordingly, we find no error in the court's charge and affirm the conviction.

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED MARCH 28, 2001 — 

*Moulton & Massey, Terry N. Massey*, for appellant.
*Richard R. Read, Solicitor, Robert D. James, Jr., Assistant Solicitor*, for appellee.