A02A1642. THE STATE v. UNDERWOOD.
(572 SE2d 394)

SMITH, Presiding Judge.

Steven Underwood was charged by accusation with two counts of DUI and one count of failing to keep correct information on his driver's license. The State appeals from the trial court's order granting Underwood's motion to suppress. This ruling was based on the trial court's determination that the police had no reason to stop Underwood's car. Because we conclude that Underwood was not "stopped," we reverse.

The evidence presented during the hearing on Underwood's motion is undisputed. Michelle Willis, Underwood's former girlfriend, testified that Underwood called her around 9:00 p.m., told her he was on Covington Highway, and asked her to go out and have drinks with him. She declined. Approximately 20 minutes later, she saw a suspicious-looking large truck parked outside her house, and she called the police. At the time she made the call, Willis did not believe the truck belonged to Underwood. She did not think he could have arrived from Covington Highway to her home in Gwinnett County within 20 minutes. But when headlights from a passing vehicle illuminated the scene, she recognized Underwood standing outside the truck holding "a beer in one hand and a cigarette in the other." She

called the police a second time and reported that the truck belonged to her former boyfriend. After the second call, Underwood left the scene in his truck. The police arrived at Willis's home, and Underwood returned approximately five minutes later. At that time, Willis watched Underwood take his "DUI test," and she saw him "stumble out of the truck."

Officer Louis Larocca and another police officer responded to the calls placed by Willis. They arrived after Underwood left the scene. The other officer talked to Willis while Larocca briefly drove around the neighborhood to look for the truck. As he was returning to Willis's house, he noticed a truck matching the description provided by Willis approaching Willis's driveway. Larocca testified that he "had pulled [his] car up and stopped and got out and Mr. Underwood, or the blue pick-up truck pulled up alongside the road and had stopped. And I walked up to the driver's side window, because Miss Willis was yelling that's him, that's him, that's my ex-boyfriend and she ran back in the house." Larocca later added that he had stopped his police vehicle in front of Willis's house before Underwood arrived back at the scene. This was consistent with Willis's testimony that the police had arrived before Underwood returned. Larocca "went up to Mr. Underwood and asked him what was going on. He said he was on his way home." As he talked with Underwood through the open window of the truck, he noticed a strong odor of alcohol and asked Underwood to exit the truck. Underwood was arrested and was read his implied consent rights.[1] According to Larocca, Underwood agreed to take a breath test. The trial court granted Underwood's motion to suppress, stating that it did not "see any reason to have made a stop of Mr. Underwood's vehicle." The State appeals from this ruling.[2]

On appeal from a motion to suppress, we view the evidence in the light most favorable to upholding the trial court's judgment. Witness credibility rests with the trial court, and we accept that court's findings on disputed facts and credibility unless clearly erroneous. But when the evidence is not controverted and no issue exists as to witness credibility, we review de novo the trial court's application of the law to the facts. *Sanders v. State*, 247 Ga. App. 170-171 (543 SE2d 452) (2000). As discussed above, the evidence in this case is not disputed. We therefore review de novo the trial court's ruling.

At least three types of police-citizen encounters exist: verbal communications involving no coercion or detention; brief stops or

---

[1] During the hearing on the motion to suppress, only two issues were addressed, whether the stop was legal and whether Underwood was informed of his implied consent rights. The trial court based its ruling only on the purported "stop," and the legality of the stop is the only issue on appeal.

[2] We note that Underwood has not filed a responsive brief.

seizures that must be accompanied by reasonable suspicion of criminal activity; and arrests, which must be supported by probable cause. *State v. Folk*, 238 Ga. App. 206, 207 (521 SE2d 194) (1999). The first type of encounter "never intrudes upon any constitutionally protected interest since the purpose of the Fourth Amendment is not to eliminate all contact between police and citizens, but simply to prevent arbitrary and oppressive police interference with the privacy and personal security of individual citizens. [Cit.]" Id. And "[i]t is well established that an officer's approach of a stopped vehicle and inquiry as to what is going on does not constitute a 'stop' or 'seizure.'" Id.

Here, as in *Folk*, Larocca's initial approach was "a first-tier" encounter that did not require reasonable suspicion or probable cause. Larocca merely approached Underwood's stopped vehicle to find out "what was going on." No evidence was introduced showing that Larocca "asked this question in either a threatening or coercive manner." Id. Obviously, because Underwood's car was stationary when Larocca approached, he did not have to stop Underwood before making this limited inquiry. Consequently, "[n]o 'stop' occurred within the meaning of the Fourth Amendment." Id. Furthermore, no evidence was presented that at the time of the inquiry, Larocca "seized" Underwood by any show of authority or physical force or by instructing him to roll down his window or open the door of the truck. See id. at 208.

We note Willis's testimony that as Underwood returned to the scene, "he was in his vehicle driving and the police were parked where he couldn't get through" and that he "had no choice" but to stop. She testified further, however, that the police cars were not blocking the street, but rather were blocking her driveway; "they were blocking the side he was on to where . . . he couldn't get in there to me basically. And he just so happened to drive right into where the police cars were." Underwood's vehicle was not surrounded by police cars; nor does the evidence show that the police took any action that would have prevented Underwood from turning around and driving away before the initial encounter. See *Folk*, supra. "Given the casual and conversational nature of the encounter, the record simply does not show that [Underwood] had any objective belief that he was not free simply to disregard the officer's inquiry." Id. at 208. Larocca's initial approach to and conversation with Underwood were permissible. This court gives great deference to trial courts' rulings on motions to suppress unless they are clearly erroneous. See, e.g., *Brantley v. State*, 226 Ga. App. 872, 873 (2) (a) (487 SE2d 412) (1997). In this case we must conclude that the trial court clearly erred in granting Underwood's motion on the ground that an illegal stop occurred.

*Judgment reversed. Eldridge and Ellington, JJ., concur.*

DECIDED OCTOBER 11, 2002.

*Gerald N. Blaney, Jr., Solicitor-General, Emilien O. Loiselle, Jr., Jeffrey P. Kwiatkowski, Assistant Solicitors-General,* for appellant. *Glyndon C. Pruitt,* for appellee.