A03A0334. THE STATE v. OLIVER.
(583 SE2d 259)

RUFFIN, Presiding Judge.

Gregory Lavon Oliver was charged with driving under the influence of alcohol. Oliver moved to suppress evidence of his intoxication on the ground that it was the fruit of an arrest unsupported by probable cause. The trial court granted the motion, and the State appealed. For reasons that follow, we reverse.

On appeal, we view the evidence concerning the motion to sup-

press in a light most favorable to support the trial court's ruling.[1] And where, as here, "the evidence is not controverted and no issue exists as to witness credibility, we review de novo the trial court's application of the law to the facts."[2]

The undisputed evidence shows that Officer Arlen White responded to a reported motorcycle wreck. When he arrived at the scene, Officer White saw Oliver standing over the motorcycle. Oliver had lacerations on his face and hands, and, although he had been driving the motorcycle, he told White that he did not remember the wreck. White testified that he "immediately detected a strong smell of an alcoholic beverage coming from [Oliver]" and noticed that Oliver's eyes were red and glassy. White asked Oliver how much he had to drink, and Oliver responded that he did not remember.

Approximately two minutes later, paramedics arrived and started treating Oliver's injuries in the back of the ambulance. While they were doing so, White advised Oliver of his implied consent rights relating to State-administered alcohol tests and further informed Oliver of his *Miranda*[3] rights. Despite these warnings, White testified that he had not yet determined that Oliver was under the influence of alcohol to the extent that he was less safe to drive. Accordingly, White had not yet decided whether to arrest Oliver for driving under the influence.

After being informed of these rights, Oliver consented to taking a breath test and field sobriety tests. Thus, after Oliver was treated by the paramedics for his injuries, White administered a horizontal gaze nystagmus test and walk and turn test. Oliver told White that nothing would hinder his performance on the tests, but Oliver repeatedly failed to follow White's instructions during the horizontal gaze nystagmus test and performed unsatisfactorily on the walk and turn test. Based on Oliver's poor performance, the odor of alcohol, the wreck, and the fact that Oliver did not remember the wreck or how much he had to drink, White arrested him for driving under the influence to the extent that he was a less safe driver.

The trial court found these same facts in granting Oliver's motion to suppress. However, the court suppressed the evidence on the ground that Oliver "was under arrest while in the back of the ambulance, when Officer White . . . informed [him] of his *Miranda* Warning and Implied Consent Rights." Thus, according to the trial court, "the arrest was effectuated at a time before probable cause had been established by the officer." The trial court apparently believed, as Oliver argues on appeal, that Officer White's reading of these

---

[1] See *State v. Underwood*, 257 Ga. App. 893, 894 (572 SE2d 394) (2002).

[2] Id.

[3] See *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

rights, standing alone, constituted an arrest. The trial court concluded that any evidence the officer obtained beyond that point must necessarily be suppressed. We disagree.

In analyzing the trial court's ruling, we begin with the general principle that "[t]he law does not favor exclusionary rules; they hinder the search for truth."[4] Nonetheless, courts will suppress evidence obtained from "[a]n arrest unsupported by probable cause and made solely for the purpose of investigating a crime in the hope that something will turn up as a result of the ensuing investigation."[5] This is so because such search violates interests protected by the Fourth Amendment.[6] However, the mere fact that an arrest is flawed does not render all subsequently discovered evidence inadmissible.[7] Rather, the relevant inquiry "is whether the evidence sought to be suppressed is the result of exploitation of the illegality or is sufficiently attenuated from the illegality to be purged thereof."[8]

Pretermitting whether Oliver was "arrested" while in the back of the ambulance, we cannot conclude that the evidence Officer White obtained was tainted by any illegality. Even if Officer White lacked probable cause to arrest Oliver, he certainly had reasonable suspicion to continue investigating whether Oliver had been driving under the influence.[9] And Georgia law recognizes that law enforcement officers may briefly detain suspects for the purpose of continued investigation based upon reasonable suspicion without violating the Fourth Amendment.[10] In fact, Georgia law recognizes three tiers of police-citizen encounters: (1) consensual encounters; (2) brief detentions that must be supported by reasonable suspicion; and (3) arrests, which must be supported by probable cause.[11]

During a second-tier encounter, an officer is permitted to question a suspect to gather evidence of possible intoxication.[12] Additionally, an officer may conduct field sobriety tests, even in the absence of *Miranda* warnings.[13] In other words, every aspect of Officer White's investigation in this case was permissible under a second-tier encounter.[14] Thus, this is not a case in which a law enforcement officer embarked on a fishing expedition to gather evidence in violation of the Fourth Amendment.

---

[4] *Mowery v. State*, 234 Ga. App. 801, 802 (2) (507 SE2d 821) (1998).

[5] *State v. Stringer*, 258 Ga. 605 (372 SE2d 426) (1988).

[6] See id.

[7] See *Burnham v. State*, 265 Ga. 129, 131 (3) (453 SE2d 449) (1995).

[8] Id.

[9] See *Trotter v. State*, 256 Ga. App. 330, 332 (1) (568 SE2d 571) (2002).

[10] See *Welborn v. State*, 232 Ga. App. 837, 839 (2) (503 SE2d 85) (1998).

[11] See id.

[12] See *Lyons v. State*, 244 Ga. App. 658, 660 (1) (535 SE2d 841) (2000).

[13] See *Arce v. State*, 245 Ga. App. 466 (538 SE2d 128) (2000).

[14] See *Lyons*, supra.

It seems the trial court was concerned because Officer White had read Oliver his *Miranda* rights. As discussed above, such warnings are not required in order to conduct field sobriety tests.[15] Thus, Officer White essentially went beyond what he was required to do under the Fourth Amendment. But the giving of unnecessary warnings does not necessarily merit suppression of evidence. Here, "[n]o purpose of deterrence would be served by suppressing the evidence found."[16] We will not penalize an officer for going the extra mile by informing a motorist suspected of alcohol impairment of his *Miranda* and implied consent rights prior to performing field sobriety tests, where, as here, that information is purely superfluous. The trial court erred in concluding that any evidence discovered after Oliver was read his *Miranda* and implied consent rights must be suppressed. Accordingly, we reverse.

*Judgment reversed. Smith, C. J., and Miller, J., concur.*

DECIDED JUNE 11, 2003.

*Keith C. Martin, Solicitor-General*, for appellant.
*Head, Thomas, Webb & Willis, Jerry L. Webb, Jr.*, for appellee.

