A04A0785. OLIVER v. THE STATE.
(601 SE2d 774)

BLACKBURN, Presiding Judge.

In this second appearance of this case before this Court, Gregory Lavon Oliver appeals his bench trial conviction for driving under the influence to the extent that he was less safe to drive, contending that the trial court erred by denying his motion in limine to exclude the results of a State-administered blood test because: (1) his implied consent warnings were untimely administered and (2) our Supreme Court's recent opinion in *Cooper v. State*[1] requires reversal. For the

[1] *Cooper v. State*, 277 Ga. 282 (587 SE2d 605) (2003).

reasons set forth below, we affirm.

> In reviewing denial of a motion to suppress or in limine, we apply the following three principles[.] First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly errone-ous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citations, punctuation and emphasis omitted.) *Brittian v. State.*[2]
The majority of the relevant facts in this case were set forth in our prior opinion. There, we found as follows:

> The undisputed evidence shows that Officer Arlen White responded to a reported motorcycle wreck. When he arrived at the scene, Officer White saw Oliver standing over the motorcycle. Oliver had lacerations on his face and hands, and, although he had been driving the motorcycle, he told White that he did not remember the wreck. White testified that he immediately detected a strong smell of an alcoholic beverage coming from Oliver and noticed that Oliver's eyes were red and glassy. White asked Oliver how much he had to drink, and Oliver responded that he did not remember.
> Approximately two minutes later, paramedics arrived and started treating Oliver's injuries in the back of the ambulance. While they were doing so, White advised Oliver of his implied consent rights relating to State-administered alcohol tests and further informed Oliver of his *Miranda* rights. Despite these warnings, White testified that he had not yet determined that Oliver was under the influence of alcohol to the extent that he was less safe to drive. Accord-ingly, White had not yet decided whether to arrest Oliver for driving under the influence.
> After being informed of these rights, Oliver consented to taking a breath test and field sobriety tests. Thus, after Oliver was treated by the paramedics for his injuries, White

---

[2] *Brittian v. State*, 257 Ga. App. 729-730 (572 SE2d 76) (2002).

administered a horizontal gaze nystagmus test and walk and turn test. Oliver told White that nothing would hinder his performance on the tests, but Oliver repeatedly failed to follow White's instructions during the horizontal gaze nystagmus test and performed unsatisfactorily on the walk and turn test. Based on Oliver's poor performance, the odor of alcohol, the wreck, and the fact that Oliver did not remember the wreck or how much he had to drink, White arrested him for driving under the influence to the extent that he was a less safe driver.

(Punctuation and footnote omitted.) *State v. Oliver.*[3]

In addition to these facts, the record further shows that, following the arrest, a friend of Oliver's was called to come to the scene and pick up Oliver's motorcycle. After Oliver's friend arrived approximately an hour later, Officer White escorted Oliver to the hospital where he repeated the appropriate implied consent warnings. At that time, White consented to a blood test.

Prior to his bench trial, Oliver made a motion in limine to exclude testimony regarding the results of his blood test, and the trial court denied his motion. Oliver now appeals this ruling.

1. Oliver contends that the trial court erred by denying his motion in limine to exclude results of the blood test, arguing that the implied consent warning was not timely given. In making this argument, Oliver contends that language from our prior opinion dictates that the initial implied consent warning given to Oliver at the scene of the accident must be wholly disregarded and only the second warning given subsequent to arrest may be considered. We disagree.

To settle this contention, we must look back at our holding in Oliver's prior interlocutory appeal. There, we stated:

The trial court . . . suppressed the evidence [of Oliver's blood test] on the ground that Oliver was under arrest while in the back of the ambulance, when Officer White informed him of his *Miranda* Warning and Implied Consent Rights. Thus, according to the trial court, the arrest was effectuated at a time before probable cause had been established by the officer. The trial court apparently believed, as Oliver argues on appeal, that Officer White's reading of these rights, standing alone, constituted an arrest. The trial court concluded

---

[3] *State v. Oliver*, 261 Ga. App. 599, 600 (583 SE2d 259) (2003).

that any evidence the officer obtained beyond that point must necessarily be suppressed. . . .

During a second-tier encounter, [however,] an officer is permitted to question a suspect to gather evidence of possible intoxication. Additionally, an officer may conduct field sobriety tests, even in the absence of *Miranda* warnings. In other words, every aspect of Officer White's investigation in this case was permissible under a second-tier encounter. Thus, this is not a case in which a law enforcement officer embarked on a fishing expedition to gather evidence in violation of the Fourth Amendment.

It seems the trial court was concerned because Officer White had read Oliver his *Miranda* rights. As discussed above, such warnings are not required in order to conduct field sobriety tests. Thus, Officer White essentially went beyond what he was required to do under the Fourth Amendment. But the giving of unnecessary warnings does not necessarily merit suppression of evidence. Here, no purpose of deterrence would be served by suppressing the evidence found. *We will not penalize an officer for going the extra mile by informing a motorist suspected of alcohol impairment of his Miranda and implied consent rights prior to performing field sobriety tests, where, as here, that information is purely superfluous.* The trial court erred in concluding that any evidence discovered after Oliver was read his *Miranda* and implied consent rights must be suppressed. Accordingly, we reverse.

(Punctuation and footnotes omitted; emphasis supplied.) *Oliver,* supra at 600-602.

At the trial court and on appeal, Oliver contends that, because this Court referred to the initial implied consent warnings as purely superfluous, such warnings must be totally disregarded for *all* purposes. This argument, however, wholly overlooks the context in which our prior statement was made. We merely opined that the giving of both *Miranda* rights and the implied consent warnings was not required and therefore superfluous before requesting a defendant to perform field sobriety tests in a second-tier encounter. Contrary to Oliver's broad interpretation, our former statement does not mean that the initial implied consent warning may be wholly disregarded for all other purposes.

To the contrary, while the reading of Oliver's implied consent warning at the scene of the accident may have been superfluous to the validity of field sobriety testing, it most certainly is not superfluous to a consideration of Oliver's contention that he was given his implied

consent warning in an untimely manner. It is undisputed that Oliver received proper implied consent warnings not just once, but twice: both at the scene of the accident before his arrest for DUI and again after arrest but directly before the blood test to which he submitted. At both times, Oliver consented to the test.

As Oliver received implied consent warnings shortly before his DUI arrest and was reminded of them a second time after arrest and before his blood test, we do not find that, under the circumstances of this case, Oliver received such warnings in an untimely manner. Because Oliver was not free to leave at the time that the initial implied consent warning was read to him, despite the fact that he may not have been formally under arrest, the reading of the notice was accomplished at the time of the arrest in accordance with OCGA §§ 40-5-55; 40-5-67.1 (a); and 40-6-392 (a) (4). See *Crawford v. State.*[4]

2. Oliver contends that our Supreme Court's recent opinion in *Cooper v. State*, supra, requires reversal of his case. We disagree.

In *Cooper*, our Supreme Court held:

> to the extent that OCGA § 40-5-55 (a) requires chemical testing of the operator of a motor vehicle involved in a traffic accident resulting in serious injuries or fatalities regardless of any determination of probable cause, it authorizes unreasonable searches and seizures in violation of the State and Federal Constitutions.

Id. at 291 (V).

In reaching this conclusion, our Supreme Court explained:

> This Court has made plain that the Georgia Constitution does not protect citizens from compelled blood or breath testing or from the use of the results of the compelled testing at trial. *Klink v. State.*[5] See also *Strong v. State.*[6] In fact, this Court has held that our Implied Consent Statute (OCGA § 40-5-55) thus grants a *suspect* an opportunity, not afforded him by our constitution, to refuse to take a blood-alcohol test. (Emphasis supplied.) *Allen v. State.*[7] This Court's use of the term "suspect" in regard to the Implied Consent Statute brings into sharp focus the flaw in that portion of the statute compelling chemical testing of the person merely by virtue of involvement in a traffic accident resulting in serious injury or

---

[4] *Crawford v. State*, 246 Ga. App. 344, 345 (1) (540 SE2d 300) (2000).

[5] *Klink v. State*, 272 Ga. 605, 606 (1) (533 SE2d 92) (2000).

[6] *Strong v. State*, 231 Ga. 514 (202 SE2d 428) (1973).

[7] *Allen v. State*, 254 Ga. 433, 434 (1) (a) (330 SE2d 588) (1985).

fatality. There is no requirement of individualized suspicion, much less probable cause, that would render the person "suspect" of impaired driving.

(Punctuation omitted.) *Cooper,* supra at 290 (V).

Our Supreme Court explained further:

This Court has determined that our implied consent statute grants a suspect an opportunity not afforded him by our Constitution to refuse to take a blood-alcohol test, that is, it grants rather than denies a right to a defendant. *Allen v. State,* supra at 434 (1) (a). See also *Klink v. State,* supra at 606 (1). However, this Court made this determination in the situation in which the driver had already been arrested and charged with violating OCGA § 40-6-391, so the State had the probable cause necessary to gain consent. In the present case, Cooper was not suspected of violating OCGA § 40-6-391 at the time the trooper advised him of the implied consent law. Because the trooper did not find probable cause that Cooper was driving in violation of OCGA § 40-6-391, Cooper was offered two choices, neither of which the trooper was legally authorized to offer. Consequently, the trooper completely misled Cooper, albeit unintentionally, about his implied consent rights, and any consent based upon the misrepresentation is invalid. *Pilkenton v. State,*[8] see also *Commonwealth v. Kohl.*[9] The results of the blood test procured pursuant to the implied consent statute must be excluded.

*Cooper,* supra at 291-292 (VI).

In this case, Oliver was suspected of violating OCGA § 40-6-391 the first time his implied consent rights were read to him and under arrest for such violation the second time his rights were read. Implied consent warnings were not administered solely pursuant to OCGA § 40-5-55, as in *Cooper,* and, at the time that a test was conducted of Oliver's blood, probable cause that he had been driving under the influence was established. As such, *Cooper* does not control the case at hand. For the same reason, *Buchanan v. State*[10] may also be distinguished from the case at hand.

*Judgment affirmed. Barnes and Mikell, JJ., concur.*

---

[8] *Pilkenton v. State,* 254 Ga. App. 127 (1) (561 SE2d 462) (2002).

[9] *Commonwealth of Penn. v. Kohl,* 532 Pa. 152, 159, n. 1 (615 A2d 308) (1992).

[10] *Buchanan v. State,* 264 Ga. App. 148 (589 SE2d 876) (2003).

DECIDED JULY 1, 2004 —

*Head, Thomas, Webb & Willis, Jerry L. Webb, Jr.*, for appellant.
*Barry E. Morgan, Solicitor-General*, for appellee.