## A99A0210. BASS v. THE STATE.
(519 SE2d 294)

ANDREWS, Judge.

Carson Jackson Bass, Jr. appeals from denial of his motion for new trial after conviction of driving under the influence to the extent he was less safe to drive,[1] contending that venue was not proven and that admission of the results of his alco-sensor and Intoxilyzer 5000 tests was error. For the reasons which follow, we affirm.

1. Viewed with all inferences in favor of the jury's verdict, the evidence was that, on Sunday, August 31, 1997, Labor Day weekend, uniformed Officer Wright of Leslie, Georgia, was patrolling within the city limits in a marked patrol car. As he reached the city limits and was preparing to make his normal turnaround, he noticed a Ford pickup being driven by Bass on Highway 280 at 70 mph, in excess of the speed limit. Because the speeding occurred outside his jurisdiction, Wright made his usual turnaround and started back into Leslie, following the truck which slowed down as it entered the city limits. Wright continued behind the truck as it turned left onto Seabord and then left onto Bailey Avenue. Wright noticed no traffic violations to this point. As the truck turned right onto Allen Street, a two-lane road which is also Highway 118, however, it swung wide and into the oncoming traffic lane where it remained for 150 to 200 yards. At this point, Wright activated his blue lights and pulled Bass over for the improper turn at approximately 8:45 p.m.

Bass produced his license and followed Wright to the rear of his truck where Wright noticed that Bass was "more nervous than what I thought would be appropriate." Bass was talking very fast, and his eyes were quite red. As the two talked, Wright noticed the odor of alcohol on Bass' breath.

At this point, Wright decided to administer an alco-sensor test. Prior to doing so, he read the implied consent notice required by OCGA § 40-5-67.1 (b) (2). The alco-sensor was positive for alcohol. After waiting ten minutes, with Bass seated in his patrol car, Wright administered the test a second time to be sure it was not mouth alcohol that was registering. Bass was then transported the ten to fifteen minutes it took to get to Americus and the Sumter County Sheriff's Office. There, Sumter County Deputy Bryant conducted the Intoxilyzer 5000 test on Bass' breath, resulting in sequential readings of .127 and .130 at 9:29 and 9:32 p.m., respectively.

After being told of the test results, Bass did not immediately request an independent test. Approximately fifteen to twenty minutes later, however, while being booked, Bass indicated that he

---

[1] Bass was also convicted of DUI for having more than .10 grams of blood alcohol, but he was sentenced only on the less safe to drive count.

wanted one. Officer Wright then called Sumter Regional Hospital to inquire and informed Bass that a blood test was $120 and a urine test was $80.[2]

Bass said he wanted a urine test, but did not have $80. A phone was available to prisoners at the sheriff's department, and they were not limited as to the number of calls which they could make. Although Bass did make phone calls, he never told Wright that he had an ATM card or that someone could meet him at the hospital with the money and made no further mention of an independent test.

Bass was then transported back to Leslie by Officer Wright. Someone met Bass at the Leslie Police Department and posted his bond.

Bass, a landscaper in Americus, testified that he had worked outside all day clearing land that Sunday and that might have accounted for his red eyes. He then attended a dinner party by the river. While there, he drank two vodka and orange juices, each containing about four ounces of vodka. He ate a full meal and left the party around 8:30 p.m. and opined that he "shouldn't have been drunk."

In rebuttal, the State presented Georgia Bureau of Investigation analyst Hargett who opined that, if in fact Bass had had only the two drinks to which he testified, his blood alcohol should have been .04 when it was tested.

The evidence was legally sufficient. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Gilbert v. State,* 262 Ga. 840 (1) (426 SE2d 155) (1993).

2. Bass contends that the State failed to prove venue in Sumter County beyond a reasonable doubt, based primarily on *Graves v. State,* 269 Ga. 772 (504 SE2d 679) (1998).

While *Graves* does state that the filing of a not guilty plea preserves a defendant's appellate challenge to venue,

> that case also recognizes the general rule that "when the evidence is not conflicting and when no challenge to venue is raised at trial," slight evidence will be sufficient to prove venue. Id. at 773. See also *Minter v. State,* 258 Ga. 629 (373 SE2d 359) (1988); *Joiner v. State,* 231 Ga. App. 61 (497 SE2d 642) (1998).

*Frisbey v. State,* 236 Ga. App. 883, 885 (2) (514 SE2d 453) (1999).

Here, as in *Frisbey,* other than the entry of a not guilty plea, Bass did not contest venue in Sumter County, and there was sufficient circumstantial evidence of venue. Officer Wright, while a city

---

[2] There was no equipment at the hospital for doing a breath test.

officer, upon stopping any suspect, including Bass, radioed to the Sheriff's Office to let them know his location in case of trouble. Officer Wright took Bass to Americus to the Sumter County Sheriff's Office for administration of the Intoxilyzer 5000 test, a trip of ten to fifteen minutes from the location of the stop. Sumter County Deputy Bryant administered the Intoxilyzer. When Bass indicated an interest in an independent test, Officer Wright contacted the Sumter Regional Hospital to make inquiries. This evidence of venue was sufficient. *Busch v. State*, 234 Ga. App. 766 (507 SE2d 868) (1998).

3. Bass contends that the trial court's admission of the Intoxilyzer 5000 results was error because the implied consent notice was read before he was placed under arrest and not in the exact language of the statute.

(a) With regard to the latter, since the trial court's ruling,

> the legislature has amended OCGA § 40-5-67.1 (b) so that it plainly does not require a verbatim reading of the implied consent notice. In passing the amendment, the General Assembly declared, but did not codify, "that while suspects in (DUI) cases should be informed of their rights regarding the administration of chemical testing, no such suspect is entitled to a notice which tracks the exact language of the implied consent statute, so long as the substance of the notice remains unchanged." Ga. L. 1998, p. 210, § 1. The amended OCGA § 40-5-67.1 (b), effective March 27, 1998, provides that the implied consent notice "shall be read in its entirety but need not be read exactly so long as the substance of the notice remains unchanged."

*State v. Levins*, 234 Ga. App. 739-740 (2) (507 SE2d 246) (1998). The statute is to be applied retroactively and is applicable to the present case. See, e.g., *Sheridan v. State*, 236 Ga. App. 350 (511 SE2d 908) (1999).

None of the deviations complained of by Bass in any way changed the substance of the notice, and there was no error in denying the motion to suppress on this ground.

(b) Regarding the timing of the notice, Bass argues that, since Officer Wright read him the implied consent notice after he smelled alcohol on his breath but before administering the alco-sensor, he was not yet under arrest and the notice was "premature."

Prior to trial, the trial court held a hearing on Bass' motion in limine and to suppress regarding the Intoxilyzer and alco-sensor tests. Having heard the testimony of Officer Wright, the trial court ruled that Bass was not free to leave even before the administration of the alco-sensor tests and, therefore, the reading of the notice was

done at the "time of the arrest" as required by OCGA §§ 40-5-55, 40-5-67.1 (a), and 40-6-392 (a) (4) and not before arrest.[3]

In reviewing the trial court's denial of Bass' motion, we construe the evidence on the motion in favor of the trial court's findings and judgment and adopt the trial court's findings on disputed facts and credibility unless those findings are clearly erroneous. *Frisbey*, supra at 883-885 (1). Here, although Bass contends that he did not understand the trial court's factual ruling and argues for a different factual conclusion as to the time of arrest, we do not find the trial court's conclusion in this regard clearly erroneous. Therefore, there is no basis for this Court to reverse the trial court's conclusion, and the Intoxilyzer results were properly admitted.

4. Finally, Bass contends that the trial court erred in allowing evidence of the alco-sensor test results because the proper foundation was not laid, based on *Gray v. State*, 222 Ga. App. 626, 628 (1) (476 SE2d 12) (1996).

In order to lay the foundation for admission of the alco-sensor results, the prosecutor asked Officer Wright if, by training and experience, he knew that the design of the alco-sensor had been approved by the Division of Forensic Sciences of the GBI for use in detecting the presence of alcohol in a person's body. He responded, "As far as I know, yes, because every patrol car and every officer that I know uses an Alcosensor."

Assuming, without deciding, that this answer was insufficient to prove the required foundation, we find, given the totality of the evidence, it is highly probable that this did not affect the jury's verdict and it does not constitute reversible error. *Mealor v. State*, 233 Ga. App. 193 (1) (504 SE2d 29) (1998); *Knapp v. State*, 229 Ga. App. 175, 179 (5) (493 SE2d 583) (1997).

*Judgment affirmed. Johnson, C. J., McMurray, P. J., Pope, P. J., Smith and Eldridge, JJ., concur. Ruffin, J., concurs in part and dissents in part.*

RUFFIN, Judge, concurring in part and dissenting in part.

I concur in the Court's opinion, except for its holding in Division 2. Venue is an essential element that must be proved by the prosecution beyond a reasonable doubt. *Graves v. State*, 269 Ga. 772, 773 (1) (504 SE2d 679) (1998). I remain steadfast in my belief that the testimony of the arresting officer regarding the county in which he works is not sufficient to prove venue beyond a reasonable doubt. See *Frisbey v. State*, 236 Ga. App. 883, 886 (514 SE2d 453) (1999) (Ruffin,

---

[3] Even assuming that the notice was read before Bass was placed under formal arrest, it is unclear what harm befell him as a result. Harm as well as error must be shown. See *Parsons v. State*, 190 Ga. App. 803 (380 SE2d 87) (1989).

J., dissenting); *Joiner v. State*, 231 Ga. App. 61, 63 (497 SE2d 642) (1998) (Ruffin, J., dissenting); *Brinkworth v. State*, 222 Ga. App. 288, 289 (474 SE2d 9) (1996) (Ruffin, J., dissenting). Accordingly, I respectfully dissent.

DECIDED JUNE 10, 1999 — CERT. APPLIED FOR.

*Hagler, Hyles, Adams & Hix, Clark C. Adams, Jr.*, for appellant.
*Howard S. McKelvey, Jr., Solicitor*, for appellee.