## A04A0838. HANDSCHUH v. THE STATE.
### (607 SE2d 899)

BARNES, Judge.

Following his jury convictions for driving under the influence and failure to maintain a lane, Bryan Reid Handschuh appeals the denial of his motion for new trial, contending that the trial court erred in denying his motion to suppress, failing to excuse a juror for cause, and considering a Georgia Crime Information Center printout in sentencing. Because the Supreme Court of Georgia found unconstitutional that portion of the statute on which the trial court relied in admitting evidence of Handschuh's refusal to take a blood test, we reverse his conviction for DUI.

> In reviewing denial of a motion to suppress or in limine, we apply the following three principles: First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citations, punctuation and emphasis omitted.) *Brittian v. State*, 257 Ga. App. 729-730 (572 SE2d 76) (2002).

So viewed, the record demonstrates that on January 31, 2003, at approximately 5:46 a.m., a Fayette County police officer was dispatched to the scene of an automobile accident. When he arrived he saw Handschuh's overturned Ford Ranger truck approximately 200 feet off the side of the embankment of a main road. When the officer approached the vehicle, he noticed a strong odor of alcohol emanating from the truck. Handschuh, who was pinned inside the truck, repeatedly said that he was an organ donor, and asked the officer to call his parents and tell them that he loved them, but he was unresponsive to any other questions. The officer thought that Handschuh might have a head injury or might be intoxicated.

After emergency personnel arrived and freed Handschuh, he was transported to a local hospital. Although externally he did not appear to have any serious injuries, the EMTs told the officer that he was not responding to pain stimuli in his lower extremities. After Handschuh was transported to the hospital, the officer investigated the accident site and recovered from the truck an opened bottle of Crown Royal

liquor and several unopened cans of beer from the truck. Handschuh's truck was equipped with an ignition interlock device.

The officer went to the hospital to question Handschuh, and noticed the odor of alcohol on Handschuh's breath. The officer also noted that Handschuh's speech was slurred, he was combative with the EMT and hospital personnel, and he repeatedly demanded to be released from the hospital. The officer testified that he "told [Handschuh] about his injuries and the seriousness of his injuries, and I said I've got to read something to you. It's called Implied Consent notice, suspects age 21 and over." He then read Handschuh the implied consent notice. Handschuh did not respond to the officer, and when a technician from the hospital came to draw his blood, he refused to cooperate. The officer told Handschuh that his actions constituted a refusal. Handschuh was arrested six days later and charged by accusation with driving under the influence, failure to maintain a lane, and violating the open container law.

Before trial, he filed a motion in limine and to suppress all evidence of his refusal to submit to the blood test. The trial court denied the motion and admitted evidence of the refusal, finding that,

> there had not been a formal arrest at the time the Implied Consent rights were read. However, I do feel that the officer had probable cause to arrest. I also believe that the officer had probable cause to believe and suspect that there was a serious physical injury at the time. Based upon that, I think he was justified under 40-5-55 of the Official Code of Georgia to request said test. For that reason and others, I'm going to deny the motion to suppress on that issue.

A jury convicted Handschuh of DUI and failure to maintain his lane, and acquitted him of the open container violation.

1. OCGA § 40-5-55 (a), provides that a person who drives a vehicle in Georgia is deemed to have given consent to a chemical test of his blood for the purpose of determining the presence of alcohol or any other drug, if (1) he is arrested for any offense arising out of acts alleged to have been committed in violation of OCGA § 40-6-391,[1] or if (2) he is involved in any traffic accident resulting in serious injuries or fatalities. In October 2003, our Supreme Court held in *Cooper v. State*, 277 Ga. 282 (587 SE2d 605) (2003), that OCGA § 40-5-55 (a) is unconstitutional to the extent it requires chemical testing of the driver of a vehicle involved in a traffic accident resulting in serious

---

[1] OCGA § 40-6-391, among other things, makes it illegal to drive while under the influence of alcohol or drugs.

injuries or death regardless of any probable cause determination. The Supreme Court reasoned that the provision violates the Fourth and Fourteenth Amendments of the Constitution of the United States because it authorizes a search and seizure without probable cause.

Handschuh contends the trial court should have granted his motions to suppress because his refusal was admitted under OCGA § 40-5-55, which per *Cooper*, is unconstitutional to the extent that it requires the chemical testing of the operator of a motor vehicle involved in a traffic accident resulting in serious injuries or fatalities.[2] We agree.

The trial court specifically held that Handschuh's testing was performed pursuant to the provision in OCGA § 40-5-55 (a) that requires chemical testing, even in the absence of probable cause, of anyone driving a motor vehicle who "is involved in any traffic accident resulting in serious injuries or fatalities." Handschuh was not under arrest, and the officer testified that he read Handschuh his implied consent rights because of the "seriousness of his injuries."

"We note that the facts arguably would have supported the giving of an implied consent notice based on an alleged violation of OCGA § 40-6-391. However, the statute, as it now stands, provides that consent is implied only if a person is *arrested* for a violation of OCGA § 40-6-391." (Footnote omitted; emphasis in original.) *Buchanan v. State*, 264 Ga. App. 148, 150 (1) (589 SE2d 876) (2003). It is important to note that, while probable cause of DUI may provide the impetus to give the implied consent warning, under OCGA § 40-5-55 (a) the implied consent test is only upheld where an arrest has actually been effectuated. See *Ferguson v. State*, 277 Ga. 530 (590 SE2d 728) (2004); *Cooper v. State*, supra, 277 Ga. 282; *Oliver v. State*, 268 Ga. App. 290 (601 SE2d 774) (2004).

Moreover, even if, as the trial court found, there was probable cause to arrest for a violation of OCGA § 40-6-391, Handschuh was not arrested until six days later. And, "under ordinary circumstances, the implied consent warning must be given at the time of the arrest, or at a time as close in proximity to the instant of arrest as the circumstances of the individual case might warrant." (Punctuation and footnote omitted.) *Crawford v. State*, 246 Ga. App. 344, 345 (1) (540 SE2d 300) (2000). That being so, an implied consent given for an arrest six days later is clearly too soon. Id.; see also *Kahl v. State*, 268 Ga. App. 879 (602 SE2d 888) (2004).

---

[2] We note that *Cooper* was not decided until after Handschuh's accident, trial, and motion for new trial. Appellate courts must apply the law as its exists at the time of the appellate court judgment, even though it may change the judgment of the trial court which was correct at the time it was rendered. *Green v. State*, 254 Ga. App. 881, 883 (1) (564 SE2d 731) (2002); *Clary v. State*, 151 Ga. App. 301, 302 (2) (259 SE2d 697) (1979).

In this regard, Handschuh's implied consent was given pursuant to the provision in OCGA § 40-5-55 (a) that required chemical testing of one "involved in any traffic accident resulting in serious injuries or fatalities." A showing that the implied consent notice was given was a necessary foundation for admission of evidence of Handschuh's refusal. Thus, because this notice was given pursuant to Handschuh's injuries, rather than violation of OCGA § 40-6-391, his refusal must be excluded, and the trial court erred in denying Handschuh's motion to suppress.

Moreover, it cannot be said that the admission of Handschuh's refusal was harmless. "[I]t is fundamental that harm as well as error must be shown for reversal." (Citation omitted.) *Matthews v. State*, 268 Ga. 798, 803 (4) (493 SE2d 136) (1997). Here, the evidence of Handschuh's guilt was not overwhelming. Although the deputy testified that he smelled alcohol emanating from Handschuh, and Handschuh was belligerent and had slurred speech, he also admitted that the belligerence and slurred speech could have had other causes, such as a head injury. Furthermore, Handschuh's witness testified that they were together from about midnight until 4:00 or 5:00 a.m., and Handschuh, who was the designated driver, did not drink any alcohol that night. He said that Handschuh had an ignition interlock device on his truck, and he saw Handschuh blow into the device on several different occasions that night and the truck always started. In the absence of field sobriety tests and other evidence of intoxication, it is highly probable that the evidence of Handschuh's refusal contributed to the jury's verdict of guilt. Id.

Accordingly, we reverse Handschuh's conviction for DUI. Handschuh does not, however, challenge his failure to maintain a lane conviction, and it is thus affirmed.

As a result of statements in certain cases[3] suggesting that the existence of probable cause without an arrest is sufficient to trigger the implied consent warnings in OCGA § 40-5-55 (a), we must address that issue. In considering whether probable cause alone is sufficient, we must keep in mind the background of our implied consent statute. In *Cooper v. State*, supra, 277 Ga. at 290 (V), our Supreme Court stated that " '(o)ur "Implied Consent Statute" (OCGA § 40-5-55) thus grants a *suspect* an opportunity, not afforded him by our constitution, to refuse to take a blood-alcohol test.' (Emphasis supplied.) *Allen v. State*, 254 Ga. 433, 434 (1) (a) (330 SE2d 588) (1985)." Thus, "OCGA § 40-6-392 and OCGA § 40-5-55 grant, rather than deny, a right to a defendant." *Allen v. State*, supra, 254 Ga. at 434 (1) (a). "OCGA § 40-5-55 creates the right to refuse. OCGA § 40-6-392

---

[3] See, e.g., *Ferguson v. State*, supra, 277 Ga. 530; *Oliver v. State*, supra, 268 Ga. App. 290.

defines the right." Id. at n. 1. "Georgia has long granted more protection to its citizens than has the United States and . . . while the States cannot grant less protection they can grant more." *Creamer v. State*, 229 Ga. 511, 515 (3) (192 SE2d 350) (1972).

When construing OCGA § 40-5-55 (a),

> the determining factor is the intent of the legislature and we look first to the words of the statute to determine what the intent was and if those words be plain and unambiguous and the intent may be clearly gathered therefrom, we need look no further in determining what the intent was. Moreover, where the language of an Act is plain and unequivocal, judicial construction is not only unnecessary but is forbidden. In all interpretations of statutes the ordinary signification shall be applied to all words. There is no reason to depart from these rules in this case.

(Citations and punctuation omitted.) *State v. Simmons*, 270 Ga. App. 301, 302-303 (605 SE2d 846) (2004) (physical precedent only).

The controlling sentence in OCGA § 40-5-55 (a) states that

> any person who operates a motor vehicle upon the highways or elsewhere throughout this state shall be deemed to have given consent, subject to Code Section 40-6-392, to a chemical test or tests of his or her blood, breath, urine, or other bodily substances for the purpose of determining the presence of alcohol or any other drug, *if arrested for any offense arising out of acts alleged to have been committed in violation of Code Section 40-6-391.*

(Emphasis supplied.) This language is plain and unambiguous, and thus permits no judicial construction. Therefore, a driver must be arrested before he shall be deemed to have given consent to have a chemical test performed to determine the presence of alcohol or other drug, and the existence of mere probable cause to arrest is not sufficient. As our Supreme Court stated in *State v. Johnston*, 249 Ga. 413, 414 (2), n. 1 (291 SE2d 543) (1982), "implied consent is contingent upon an arrest 'for any offense arising out of acts alleged to have been committed while the person was driving . . . under the influence of alcohol. . . .' "

Accordingly, we must overrule *Kahl v. State*, supra, 268 Ga. App. 879; *State v. Goolsby*, 262 Ga. App. 867, 871 (586 SE2d 754) (2003); *State v. Lentsch*, 252 Ga. App. 655 (556 SE2d 248) (2001); and any other cases holding that an arrest is not required. Further, we disapprove any statements in *Hough v. State*, 269 Ga. App. 744,

746-747 (2) (b) (605 SE2d 43) (2004); *Oliver v. State*, supra, 268 Ga. App. 290; *Carthon v. State*, 248 Ga. App. 738, 740-741 (1) (548 SE2d 649) (2001); *Fairbanks v. State*, 244 Ga. App. 123, 124 (1) (534 SE2d 529) (2000); *Joiner v. State*, 239 Ga. App. 843 (522 SE2d 25) (1999); *Bass v. State*, 238 Ga. App. 503, 505-506 (3) (b) (519 SE2d 294) (1999), overruled on other grounds, *Jones v. State*, 272 Ga. 900, 903 (2) (537 SE2d 80) (2000); and any other cases that conflict with *Buchanan v. State*, supra, 264 Ga. App. 148, and can be read to support the conclusion that probable cause without an arrest is sufficient to trigger the implied consent warnings in OCGA § 40-5-55 (a).

2. Because of our decision in Division 1, Handschuh's remaining enumerations of error are moot.

*Judgment affirmed in part, reversed in part and remanded. Ellington, Phipps and Mikell, JJ., concur. Blackburn, P. J., and Miller, J., concur fully and specially. Ruffin, P. J., concurs specially. Smith, C. J., Andrews, P. J., Johnson, P. J., Eldridge and Adams, JJ., dissent.*

BLACKBURN, Presiding Judge, concurring fully and specially.

I concur fully in the opinion of the majority. I write, however, (a) to identify further support for the conclusion that an arrest is required before consent is implied and thus before the refusal to consent may be used against the defendant and (b) to respond to some of the points raised in the dissent.

1. As stated so clearly in *State v. Johnston*,[4] "implied consent is contingent upon an arrest. . . ." Unfortunately, as noted by the majority, the Court of Appeals has routinely misinterpreted the operative statute on this point, which requires the various overrulings and disapprovals as set forth in the majority opinion.[5] Absent an arrest, there is nothing in the statute which implies consent for a chemical test. Thus, it is premature for an officer to read an implied consent notice to a driver before that driver is arrested. If the officer does so, he is misinforming the driver that under Georgia law, the driver has already impliedly consented to submit to state-administered chemical tests and that a refusal to allow such may be offered into evidence against the driver at trial,[6] when in fact OCGA § 40-5-55 (a) does *not* imply such consent until an arrest is effected.

---

[4] *State v. Johnston*, 249 Ga. 413, 414 (2), n. 1 (291 SE2d 543) (1982). Curiously, the dissent's quote of this sentence from *Johnston* fails to include this key language.

[5] Indeed, *Oliver v. State*, 268 Ga. App. 290 (601 SE2d 774) (2004), which is distinguishable in that the implied consent notice was read after the arrest (in addition to before the arrest), nevertheless contains language that should also be disapproved. See id. at 294 (1).

[6] OCGA § 40-5-67.1 (b).

In addition to the plain language of OCGA § 40-5-55 (a), the statutes relating to when such refusal may be used against a driver require such an arrest before consent is implied and thus before the refusal to consent to such tests may be used against the driver. OCGA § 40-6-392 (d), which is the operative statute addressing when the refusal to consent is admissible in evidence against the defendant, specifies that the refusal is "the refusal of the defendant to permit a chemical analysis to be made of his blood, breath, urine, or other bodily substance *at the time of his arrest. . . .*" (Emphasis supplied.) OCGA § 40-5-67.1 (d), which addresses an officer's reporting responsibilities of a refusal to consent, states:

> *If a person under arrest . . .* refuses, upon the request of a law enforcement officer, to submit to a chemical test designated by the law enforcement officer as provided in subsection (a) of this Code section, no test shall be given; but the law enforcement officer shall report the refusal to the department. Upon the receipt of a sworn report of the law enforcement officer that the officer had reasonable grounds to believe the *arrested* person had been driving or was in actual physical control of a moving motor vehicle upon the highways or elsewhere throughout this state in violation of Code Section 40-6-391 . . . and that the person had refused to submit to the test upon the request of the law enforcement officer, the department shall suspend the person's driver's license, permit, or nonresident operating privilege for a period of one year. . . .

(Emphasis supplied.)

Thus, in addition to the plain language of OCGA § 40-5-55 (a), these other Code sections mandate the necessity of an arrest before any consent is implied and thus before any legal consequences of refusing such consent are triggered.

2. The dissent argues that the "combination of serious injury *and* probable cause is sufficient to pass muster under *Cooper* [*v. State*[7]]." The dissent focuses on the language in *Cooper* that OCGA § 40-5-55 is unconstitutional "*to the extent* that [it] requires chemical testing of the operator of a motor vehicle involved in a traffic accident resulting in serious injuries or fatalities regardless of any determination of probable cause. . . ." (Emphasis supplied.) *Cooper*, supra at 291 (V). The dissent contends that the "to the extent" language means that in those cases where probable cause is present, then that portion of the

---

[7] *Cooper v. State*, 277 Ga. 282 (587 SE2d 605) (2003).

statute (which implies consent to tests where there is serious injury) is revived and thus requires drivers involved in such accidents to take such tests or else face the consequences of losing their license and of having their refusal used against them in a trial.

I disagree. The key sentence in OCGA § 40-5-55 (a) sets forth two circumstances under which consent is implied. The second circumstance — involvement in a traffic accident resulting in serious injuries — contains no requirement for a probable cause finding and therefore under *Cooper* was declared unconstitutional. Once the Supreme Court of Georgia declares a statute unconstitutional, we are not authorized to revive that statute through interpretation. The dissent's argument that all is well because we happen to have probable cause in this particular case ignores that the statute continues to have a fatal defect (as found in *Cooper*) that probable cause is not required in the statutory language; thus, this portion of the statute remains constitutionally infirm. In other words, the presence of probable cause in the present case does not correct the constitutional infirmity. Only the legislature — not this Court — may amend the statute so as to correct its constitutional defect.

3. The dissent's focus on *Cooper*'s words "to the extent" as possibly saving OCGA § 40-5-55 (a) is misplaced. The key sentence in OCGA § 40-5-55 (a) reads:

> Therefore, any person who operates a motor vehicle upon the highways or elsewhere throughout this state shall be deemed to have given consent, subject to Code Section 40-6-392, to a chemical test or tests of his or her blood, breath, urine, or other bodily substances for the purpose of determining the presence of alcohol or any other drug, if arrested for any offense arising out of acts alleged to have been committed in violation of Code Section 40-6-391 or if such person is involved in any traffic accident resulting in serious injuries or fatalities.

Thus, implied consent arises in either of two circumstances: the driver is arrested for any offense arising out of certain acts or the driver is involved in a traffic accident resulting in serious injuries or fatalities. Because an arrest is required in the former circumstance, probable cause is necessarily present. Because only a traffic accident involving certain injuries is required in the latter circumstance, no probable cause is required, which is the constitutional defect found in *Cooper*. In declaring this latter circumstance identified in the operative sentence as unconstitutional, *Cooper* necessarily used the words "to the extent" so as to clarify that the former circumstance identified in the same sentence was not being declared unconstitutional. Thus,

the statute was being declared unconstitutional only *to the extent* it (i.e., only that portion that) authorized *serious injuries in a vehicle accident* to trigger the implied consent to chemical tests, and was not being declared unconstitutional *to the extent* it (i.e., that portion that) authorized *an arrest* — which by definition would require probable cause — to trigger that consent.

4. The dissent maintains that OCGA § 40-5-55 (a) "does not speak to the timing of the reading of an IC notice [but instead] addresses the post-arrest authority to administer a chemical test...." (Emphasis omitted.) The dissent argues that "[w]hat the majority is doing here is mixing up the obligation to read IC warnings as close to the time of arrest as circumstances permit with the statutory authority to perform a chemical test after arrest."

I disagree. The timing of the reading of an implied consent notice is of utmost importance if the accused's response to that reading is going to be used against him at trial. If at the time of the reading no arrest has been effectuated, then the reading is a misrepresentation that the accused has already impliedly consented to a chemical test when in fact the absence of the arrest simply makes that untrue. Not until the arrest occurs does the statute imply consent. Thus, the driver's response to a premature and misleading request for chemical tests should not and cannot be used against the driver, for the very statutes authorizing the reporting and use of such a refusal as evidence specifically require that the driver be "under arrest" at the time of the refusal. OCGA § 40-5-67.1 (d). See OCGA § 40-6-392 (d) (only the refusal "at the time of his arrest shall be admissible"). The legislature could not have been clearer in these statutes that the timing of the reading of the implied consent notice is determinative in whether the driver's response to that reading is admissible. Because the admissibility of that refusal is the key issue in this case, we cannot gloss over this statutory language and claim that it pertains only to the post-arrest authority to administer a chemical test.

5. Finally, the dissent's attempts to distinguish *Buchanan v. State*[8] are ineffective. *Buchanan* holds without equivocation that "the statute, as it now stands, provides that consent is implied only if a person is *arrested* for a violation of OCGA § 40-6-391." (Emphasis in original.) Id. at 150 (1). The officer's probable cause belief in *Buchanan* as to the driver's being under the influence of alcohol or drugs was insufficient to validate the reading of the implied consent notice prior to the driver's arrest.

For these reasons, I concur fully and specially in the majority opinion.

---

[8] *Buchanan v. State*, 264 Ga. App. 148 (589 SE2d 876) (2003).

I am authorized to state that Judge Miller joins in this special concurrence.

RUFFIN, Presiding Judge, concurring specially.

Although I concur in the result reached by the majority opinion, I cannot agree with the majority's decision to overrule and disapprove of several cases, including *Kahl v. State*,[9] relating to the timing of the Georgia implied consent notice.[10] In *Kahl*, we followed prior precedent in noting that " 'under ordinary circumstances, the implied consent warning must be given at the time of the arrest, or at a time as close in proximity to the instant of arrest as the circumstances of the individual case might warrant.' "[11] Based on this principle, we found valid an implied consent notice read just seconds before a DUI defendant's formal arrest.[12] In so doing, we rejected the defendant's argument that such notice is proper *only* if read to a defendant *after* the formal arrest.[13]

I agree with the majority that the implied consent notice given to Bryan Handschuh in this case was invalid. A notice read *six days before the arrest* cannot be characterized as given "at the time of arrest" or close in proximity to the instant of arrest. Such result does not conflict with *Kahl*. Moreover, the majority correctly finds that, pursuant to our Supreme Court's decision in *Cooper v. State*,[14] the "serious injuries or fatalities" language in OCGA § 40-5-55 (a) no longer authorizes chemical testing without probable cause.

But, despite reaching these fully supported and dispositive conclusions, the majority goes further. It elects to unnecessarily overrule *Kahl* and other cases that support the proposition that, in certain circumstances, an implied consent notice read at the time of arrest — but before the moment of formal arrest — is valid. Given the facts of this case, I see no reason for this attack on our precedent. And I cannot agree that the legislature intended the rigid result advocated by the majority, which would invalidate an implied consent warning given only seconds before an arrest.

ELDRIDGE, Judge, dissenting.

1. The trial court found that Handschuh was read an implied consent ("IC") notice on the basis of both serious injury *and* probable cause to arrest for DUI; the probable cause determination was based

---

[9] 268 Ga. App. 879 (602 SE2d 888) (2004).

[10] See OCGA § 40-5-67.1.

[11] Supra at 881.

[12] See id.

[13] See id.

[14] 277 Ga. 282-283, 290-291 (587 SE2d 605) (2003).

upon the inexplicable location of Handschuh's vehicle overturned 200 feet off the side of an embankment, the strong odor of alcohol coming from the vehicle, the open Crown Royal container found in the vehicle, the strong odor of alcohol on Handschuh's breath, his slurred speech, and his belligerence toward the hospital personnel trying to aid him. The officer specifically testified that he determined Handschuh to be intoxicated, but too incapacitated with a possible spinal injury to be physically placed under arrest. Therefore, pursuant to OCGA § 40-5-55 (a) relating to serious injury, the officer read Handschuh the IC notice for suspects over 21. Handschuh refused testing.

In *Cooper v. State*,[15] our Supreme Court recognized that, "[I]t is clear that the legislature can condition the privilege of driving upon submitting to a chemical test if a driver is involved in an accident resulting in serious bodily injury or death."[16] The Court's Fourth Amendment concern was directed toward seizing blood under implied consent for a DUI test *solely* due to the presence of serious injury or death, without any cause to believe that DUI was involved. So, *Cooper* held "that OCGA § 40-5-55 is unconstitutional *'to the extent* that it requires chemical testing of the operator of a motor vehicle involved in a traffic accident resulting in serious injuries or fatalities *regardless* of any determination of probable cause.' "[17]

In this case, however, the officer did not seek chemical testing solely due to involvement in a traffic accident resulting in serious injury or death; the officer's request was supported by probable cause. This combination of serious injury *and* probable cause is sufficient to pass muster under *Cooper*.[18] "A constitutional challenge to a criminal statute which is not based on alleged violations of the First Amendment must be examined in light of the facts of the case at hand."[19] In that regard, OCGA § 40-5-55 (a) was constitutional as applied to this case. The IC notice was properly read, and testing was refused. In my view, the trial court's denial of the motion in limine should be affirmed.

2. Because testing was sought pursuant to the serious injury portion of OCGA § 40-5-55 (a) and was supported by probable cause, the issue of arrest is totally irrelevant in this case. And the majority's discussion thereof is totally gratuitous.

---

[15] 277 Ga. 282 (587 SE2d 605) (2003).

[16] Id. at 290 (V).

[17] (Punctuation omitted; emphasis supplied.) *Ferguson v. State*, 277 Ga. 530 (590 SE2d 728) (2004), citing *Cooper v. State*, supra at 291.

[18] *Hough v. State*, 269 Ga. App. 744 (605 SE2d 43) (2004).

[19] (Citation omitted.) *State v. Boyer*, 270 Ga. 701, 704-705 (512 SE2d 605) (1999) (Carley, J., concurring specially).

More importantly, however, not one of the three cases the majority overrules held that a chemical test can be administered without arrest. In *State v. Goolsby*,[20] the issue was testing after an arrest for an offense *other* than DUI; at the time of testing, Goolsby was under arrest for failure to maintain a lane, and the officer had "reasonable grounds" to believe he was DUI.

In both *Kahl v. State*[21] and *State v. Lentsch*,[22] the defendants were under arrest at the time of testing, and the officers reasonably believed them to be DUI; the issue in *Kahl* and *Lentsch* was the timing of the reading of the IC warnings. The law in that regard is that an IC warning should be read "at a time as close in proximity to the instant of arrest as the circumstances of the individual case might warrant."[23] The statute in question, OCGA § 40-5-55, does not speak to the timing of the reading of an IC notice; instead, the statute addresses the post-arrest *authority* to *administer* a chemical test of a driver's blood, breath, urine, or other bodily substance pursuant to implied consent.

What the majority is doing here is mixing up the obligation to read IC warnings as close to the time of arrest as circumstances permit with the statutory authority to perform a chemical test after arrest. In my view, this merger is ill advised. The unexplained overruling of unrelated precedent is as well.

3. A fair reading of this Court's decision in *Buchanan v. State*[24] does not permit the majority's interpretation that a suspect must be arrested specifically for driving under the influence before chemical testing under implied consent is authorized.[25] *Buchanan* was fact driven and legally distinguishable from this case. In *Buchanan*,

> the police officer testified that, based on Buchanan's behavior, he concluded that Buchanan was either injured or under the influence of alcohol or drugs; the officer *was not sure to which circumstance he could attribute Buchanan's conduct.*[26]

Clearly, these ambiguous facts did not demonstrate either probable

---

[20] 262 Ga. App. 867 (586 SE2d 754) (2003).

[21] 268 Ga. App. 879 (602 SE2d 888) (2004).

[22] 252 Ga. App. 655 (556 SE2d 248) (2001).

[23] *Perano v. State*, 250 Ga. 704, 708 (300 SE2d 668) (1983); accord *Crawford v. State*, 246 Ga. App. 344, 345 (1) (540 SE2d 300) (2000).

[24] 264 Ga. App. 148, 150 (589 SE2d 876) (2003).

[25] The implied consent statute, OCGA § 40-5-55 (a), permits the administration of a chemical test if a person is "arrested for *any offense* arising out of acts alleged to have been committed in violation of Code Section 40-6-391." (Emphasis supplied.) See *State v. Goolsby*, supra at 871.

[26] (Emphasis supplied.) *Buchanan v. State*, supra at 150 (1).

cause to suspect Buchanan of DUI or a serious injury, pursuant to the requirements of OCGA § 40-5-55 (a) as explained by *Cooper*; nor was there an arrest under OCGA § 40-6-391 so as to permit the chemical testing that occurred. Further, as in *Cooper*, Buchanan consented to having his blood tested after being told that "the officer . . . 'had to take it anyway' given the seriousness of the accident. [Thus,] Buchanan did not believe he had a choice."[27]

Here, on the other hand, Handschuh was given a choice and he refused. Moreover, there was the possibility of serious injury as well as probable cause to suspect Handschuh of DUI. Based upon these factual and legal distinctions, the majority plainly misapplies our decision in *Buchanan* to the circumstances of this case.

4. To me, the largest flaw in the majority and special concurrence's reasoning is reflective of a general myopia that will not allow the specific factual circumstances of a case to impact on the proper application of the appropriate legal principle. *Cooper* held as unconstitutional DUI testing based solely on injury *without* probable cause to establish DUI; so, the majority finds unconstitutional DUI testing based on injury *with* probable cause to establish DUI. *Buchanan* contained a statement regarding the inapplicability of implied consent in light of the officer's failure to arrest for DUI or to establish that Buchanan was drunk or injured; so, the majority finds that a suspect *must* be arrested for DUI before consent may be implied, even when an officer establishes probable cause to find a suspect drunk or injured. OCGA § 40-5-55 (a) states that all Georgians who operate a motor vehicle impliedly consent to the administration of a chemical test simply through exercising the privilege of driving, which test will be *administered* if "arrested"; so, the majority finds that one must be arrested before implied consent even arises and thus before a suspect can refuse testing. The law does not exist in a vacuum, and the facts of a case are irrelevant only in a nonexistent abstract world. No good can come from the failure to recognize that the application of appropriate legal principles is contingent upon the facts.

For these reasons, I respectfully dissent.

I am authorized to state that Chief Judge Smith, Presiding Judge Andrews, Presiding Judge Johnson and Judge Adams join in this dissent.

---

[27] Id. at 149.

DECIDED DECEMBER 1, 2004 —

*Sexton & Morris, Joseph S. Key,* for appellant.
*Steven L. Harris, Solicitor-General,* for appellee.