A06A0454. NELSON v. THE STATE.

(632 SE2d 749)

BERNES, Judge.

Patrick Henry Nelson appeals from his convictions following a jury trial on one count of child molestation and five counts of aggravated child molestation. On appeal, he alleges the following: (1) the trial court erred in admitting child hearsay that lacked sufficient indicia of reliability; (2) the trial court erred in denying his motion for new trial based on an alleged violation of *Brady v. Maryland*;[1] (3) the trial court erred in denying his motion for mistrial made after a state's witness improperly commented on Nelson's right to remain silent; and (4) the trial court erred in permitting an unlicensed psychologist to testify as an expert. For the reasons that follow, we affirm.

Viewed in a light most favorable to the guilty verdict, the facts adduced at trial show that in January 2001, Nelson lured C. W., an 11-year-old male, and his younger brother, S. W., into his apartment using fish aquariums and snacks. Within two weeks of their initial meeting, Nelson began sexually molesting the boys. C. W. testified at trial that the abuse started with kissing and progressed to acts of fellatio performed by Nelson on C. W., and anal sodomy performed by C. W. upon Nelson. The acts also included Nelson's rubbing of oil on C. W.'s penis, putting his penis in C. W.'s face, and bathing C. W., during which time he would touch C. W. on his "private" and "everything below [his] neck." C. W. also described an incident in which he attempted to insert a candlestick into Nelson's rectum.

---

[1] 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

S. W., who was approximately ten years old at the time, also testified to similar abuse. He stated that Nelson performed fellatio on him and that he performed fellatio on Nelson numerous times. S. W. also unsuccessfully attempted to insert his penis into Nelson's rectum several times at Nelson's direction.

At some point the boys introduced their cousin, A. W., to Nelson. A. W. was also approximately ten years old. Like his cousins, A. W. testified that he was "made [to] suck" Nelson's penis, and was subject to receiving fellatio from Nelson on more than one occasion.

C. W. testified that, in addition to being subject to the abuse himself, he actually witnessed Nelson "suck [S. W.'s] private" five or six times, and saw S. W. perform fellatio on Nelson. C. W. also testified that he witnessed Nelson's abuse of A. W., including Nelson performing fellatio on A. W.

S. W. corroborated the abuse of his brother, C. W., and testified that he witnessed the anal sodomy, the usage of lubricants on C. W.'s penis, and the incident involving the insertion of the candlestick into Nelson's rectum. Likewise, A. W. corroborated the testimony of his cousins regarding the incident involving C. W. and a candlestick.

In May 2001, the victims' aunt's suspicions were aroused because Nelson had bought C. W. numerous gifts and C. W. was spending an inordinate amount of time with Nelson. Consequently, on May 9, 2001, she notified police that she suspected that C. W. was being sexually abused by Nelson and an investigation ensued. C. W. initially denied any abuse during a recorded police interview in May 2001, although he did admit at that time that he had attempted to insert a candlestick into Nelson's rectum. A. W. also initially denied being abused himself, but he told an investigator in May 2001 that he saw C. W. insert a candlestick into Nelson's rectum while neither Nelson nor C. W. knew that he was watching. In June 2001, S. W. spontaneously told a Department of Family and Children Services ("DFCS") caseworker who was questioning him and A. W. about an unrelated incident involving C. W.[2] that "[Nelson] told [C. W.] to take a bath, and the next thing you know [C. W.] has a candle up his butt.... [C. W.] has been acting worse since all of this happened." S. W. and A. W. also denied at that time that they were subject to abuse by Nelson, although the DFCS caseworker did not specifically inquire about any abuse.

---

[2] DFCS had been involved with C. W., who was being raised by his grandmother, because of reports that he was not properly supervised. DFCS's involvement with C. W. was totally independent of the allegations of sexual abuse and, because the allegations involved an out-of-home perpetrator, DFCS was not involved in the investigation of the sexual abuse allegations.

C. W. ultimately admitted the abuse during a taped interview with a DFCS supervisor and a police investigator in August 2001. At trial, C. W. testified that he had initially denied being molested because he was "embarrassed and scared," and explained that Nelson had intimidated him and his brother by pointing a gun at his brother's "private." S. W. confirmed that Nelson had aimed a gun at his penis. Finally, A. W. testified that he was too "scared and nervous" to report the abuse. The experts for both the state and the defense testified that it is very common for children subjected to sexual abuse to initially deny that the abuse had taken place.

1. (a) Nelson maintains that the trial court erred by admitting child hearsay without sufficient indicia of reliability. Specifically, Nelson complains that the court should not have permitted the victims' aunt to testify that C. W. had admitted to her that "he used a candle to stick up [Nelson's] private." He contends that the statement lacked trustworthiness since she could not remember when C. W. made the statement and did not report it to the police.

The Child Hearsay Statute, OCGA § 24-3-16, provides that

> [a] statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another or performed with or on another in the presence of the child is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.[3]

"The trial court has broad discretion in determining the admissibility of child hearsay evidence, and we will reverse a trial court's ruling on the admissibility of statements under OCGA § 24-3-16 only if the trial court abused its discretion." (Citation and punctuation omitted.) *Fiek v. State*, 266 Ga. App. 523, 524 (1) (597 SE2d 585) (2004).

In *Gregg v. State*, 201 Ga. App. 238, 240 (3) (b) (411 SE2d 65) (1991), this Court set forth ten factors to be considered when determining whether a child's out-of-court statement provides sufficient indicia of reliability. These factors include: (1) the atmosphere in which the statement is made; (2) the spontaneity of the statement; (3) the age of the child; (4) the child's general demeanor; (5) the child's physical or emotional condition; (6) any threats or promises made to

---

[3] This statute has been found unconstitutional to the extent that it allows for the introduction of the hearsay statements of a child who witnessed the alleged abuse. See *Woodard v. State*, 269 Ga. 317, 321-323 (3) (496 SE2d 896) (1998).

the child; (7) the presence or absence of drugs or alcohol; (8) the child's general credibility; (9) any coaching by parents or other parties; and (10) the consistency between repeated out-of-court statements by the child. Id. at 240 (3) (b). However, we warned that "[t]hese factors are to be applied neither in mechanical nor mathematical fashion, but in that manner best calculated to facilitate determination of the existence or absence of the requisite degree of trustworthiness." Id. Moreover,

> while the trial court must find that the circumstances of the child hearsay statement provide sufficient indicia of reliability, such finding is not a *condition precedent* to the admissibility of the statement; rather, this statutory requirement is met if after both parties have rested, the record contains evidence which would support such a finding.

(Citation and punctuation omitted; emphasis in original.) *Baker v. State*, 252 Ga. App. 238, 241 (1) (b) (555 SE2d 899) (2001).

The record here contains sufficient evidence to support the trial court's determination that C. W.'s statement to his aunt was trustworthy. Both C. W. and A. W. had related to police in May 2001 that C. W. had attempted to insert a candlestick into Nelson's rectum, even while they both denied that any other abuse had taken place. A. W., who had not been previously questioned, made his statement at the elementary school, with counselors present. S. W. spontaneously told the DFCS caseworker about the incident in June 2001. Moreover, all three of the victims testified at trial that the occurrence had taken place, and both S. W. and A. W. testified that they actually observed it happening.

Much of Nelson's argument centers around the fact that the victims' aunt had previously told the police that C. W. had denied any abuse. Nonetheless, Nelson had every conceivable opportunity to examine and cross-examine both C. W. and his aunt in front of the jury regarding their memories and the circumstances surrounding his out-of-court statement, and the jury had the opportunity to judge the alleged making and veracity of his statement. "Alleged inconsistencies or challenges to the truthfulness of the child [or others] are matters of credibility for the jury to resolve and do not render the admission of this relevant and material evidence erroneous." *Knight v. State*, 239 Ga. App. 710, 712 (1) (521 SE2d 851) (1999).

Moreover, the record does not support Nelson's allegation that C. W. had been interviewed by and repeatedly denied abuse to "4 or 5 police officers, several DFCS workers, and at least one psychologist." The first officer who spoke to C. W. was sent to Nelson's house to retrieve C. W. in response to a call from C. W.'s grandmother. He

testified that his sole job was to take C. W. home and not to investigate any allegations of sexual abuse. A second officer who spoke to C. W. the same day worked in the traffic division of the police department and had no experience interviewing children or investigating sexual assault cases. He woke C. W. up in the middle of the night, asked him if "he was involved in anything going on." C. W. responded negatively. He did not ask follow-up questions or encourage C. W. to discuss anything further.

The DFCS caseworkers to whom Nelson alludes never interviewed any of the boys about the sexual abuse allegations. Rather, the one to whom S. W. made his spontaneous statement was told to "stay away from those allegations" because they were being investigated by the police department, and, as a result, "tried to get away from [talking about] it because [she] didn't want to deal with that issue." A second caseworker who interviewed C. W. knew nothing of the allegations until several months after she stopped working with him.

Finally, Dr. Johnson, the psychologist to whom Nelson refers, was not trained in psychosexual evaluations or in interviewing children. He interviewed the boys solely for the purpose of determining whether they were appropriate for group home placement. He asked C. W. a couple of basic questions about the allegations during the interview but quickly realized that C. W. was "resistant to disclosing the abuse," so he did not pursue further questioning, but rather made a recommendation that C. W. be evaluated by someone specializing in the area of psychosexual evaluations. The same doctor was not aware of the allegations that S. W. and A. W. had also been abused, and as a result did not ask either of them about it during the interviews.

Accordingly, the evidence presented at trial was sufficient to establish the reliability of the statement that C. W. made to his aunt and the trial court did not err in finding that it had the requisite degree of trustworthiness to be admitted at trial. See *Fiek*, 266 Ga. App. at 524 (1); *Baker*, 252 Ga. App. at 241 (1) (b); *Knight*, 239 Ga. App. at 712 (1). We nevertheless note that admission of the statement was harmless because C. W., S. W., and A. W. all testified about the incident at trial and Nelson was acquitted of the aggravated child molestation charge related to the candlestick. *Kilgore v. State*, 195 Ga. App. 884, 886 (10) (395 SE2d 337) (1990).

(b) Nelson also challenges the admission of C. W.'s verbal and written disclosures of abuse made during his August 2001 interview with a DFCS supervisor. Nelson has not preserved this allegation of error for appeal. Prior to trial, Nelson filed a motion in limine to exclude certain child hearsay. However, the trial court reserved its ruling on the issue. Nelson thereafter failed to invoke a ruling from the trial court with respect to these disclosures and did not object to

the admission of either the verbal or the written testimony at trial. While Nelson did invoke a ruling from the trial court as to the admission of the alleged hearsay from C. W.'s aunt, he indicated that the only child hearsay to which he sought a ruling was that of C. W.'s aunt. "Matters not objected to at trial cannot be raised for the first time on appeal. Likewise, self induced error cannot be complained of on appeal." (Citations and punctuation omitted.) *Fiek*, 266 Ga. App. at 526 (3) (a). See also *Brown v. State*, 193 Ga. App. 26, 27 (3) (386 SE2d 903) (1989).

2. Nelson contends that his conviction should be reversed because of an alleged *Brady v. Maryland*[4] violation. *Brady* holds that the suppression by the prosecution of evidence favorable to a criminal defendant is a violation of due process. 373 U. S. at 87. According to Nelson, since S. W. and A. W. had denied that they had been sexually abused prior to trial, but admitted to being abused at trial, S. W. and A. W. "supposedly for the first time disclosed acts of child molestation to the District Attorney in a private and unrecorded conversation" and "[b]ecause of the failure to record these conversations, [Nelson] was deprived of valuable impeaching material under *Brady v. Maryland*."

As an initial matter, Nelson's claim was waived. He failed to make any objection on this ground at trial.[5] Accordingly, Nelson did not properly preserve this argument for appeal. See *Floyd v. State*, 263 Ga. App. 42, 43 (587 SE2d 203) (2003).

Nonetheless, even if his argument had not been waived, Nelson's claim lacks merit. "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." (Citations and punctuation omitted.) *Floyd*, 263 Ga. App. at 43.

Here, the complained-of evidence was inculpatory, not exculpatory. The prior statements which were impeaching of the evidence were known to Nelson prior to trial. Moreover, no *Brady* violation occurred because the victims' testimony was introduced at trial and Nelson was given an opportunity to conduct cross-examination. "*Brady* does not require pre-trial disclosure of materials sought under a *Brady* motion. *Brady* is not violated when the *Brady* material is available to defendants during trial." (Citation and punctuation

---

[4] Supra.

[5] Nelson had filed a pre-trial Motion to Require the District Attorney or his Investigator to Preserve by Video Tape All Conversations with the Alleged Victim, but the record does not reflect that Nelson ever invoked a ruling from the trial court on this motion. See *Brown*, 193 Ga. App. at 27 (3).

omitted.) *Floyd*, 263 Ga. App. at 43. Since no *Brady* violation occurred, the trial court properly denied Nelson's motion for a new trial.

3. Nelson's next allegation of error deals with a statement made by a state witness. During its case-in-chief, the state elicited an improper comment from an investigator on Nelson's lawful exercise of his right to remain silent.[6] The fact that a defendant invokes his right to remain silent cannot be used against him at trial. *Bruce v. State*, 268 Ga. App. 677, 683 (2) (603 SE2d 33) (2004). "Nevertheless, an improper comment on the defendant's silence does not necessarily require a reversal. The grant or denial of a mistrial is within the trial court's sound discretion, and we will not interfere with the trial court's exercise of that discretion unless it is clear that a mistrial was essential to preserve the right to a fair trial." (Footnote omitted.) *George v. State*, 263 Ga. App. 541, 543 (1) (588 SE2d 312) (2003).

Here, the grant of a mistrial was not clearly essential to ensure a fair trial because the error was harmless in light of the evidence presented. "The determination of harmless error must be made on a case by case basis, taking into consideration the facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of [the] defendant's guilt." *Taylor v. State*, 253 Ga. App. 468, 469 (1) (559 SE2d 499) (2002).

The case against Nelson was a strong one. All three of the child victims testified in detail of the physical abuse that they endured, including acts of giving and receiving fellatio and anal sodomy. Each of the victims testified to personally witnessing acts of abuse involving the other children. The state's expert witness who had interviewed approximately 1,350 child victims of abuse testified that C. W.'s demeanor was consistent with that of a child who had been sexually molested. She noted that he "was acting out sexually with younger children," had a lack of trust in adults, and demonstrated "distorted sexual beliefs about sexual contact with others." Nelson's neighbor testified that she observed the three boys visiting almost daily and spending the night up to three times a week with Nelson in

---

[6] Q: Okay. Did you have an occasion to encounter Patrick Nelson?
A: Yes, sir. I have.
Q: And would you please tell the jury when that was?
A: . . . Myself and Investigator Worthy went to . . . Nelson's house . . . and we were just going over there to try to meet with him and talk to him. This is prior to talking to [C. W.] and the Nelson subject rode up on his bicycle while we were there. He was at the apartment, fixing to go in, saw us. We just identified ourselves. We had our badge and everything, so he knew we were the police. We asked if we could talk to him and he pretty much advised us that he didn't want to talk to us. He didn't like the police.

his one-bedroom apartment and was alarmed to the point that she alerted the authorities on at least five separate occasions.

Moreover, the investigator's statement was an unsolicited comment made as part of a narrative of events and was not capitalized on by the prosecutor. The trial court charged the jury that Nelson was not required to present any evidence and was not required to testify, and further charged that the jury could not draw any negative inferences from Nelson's silence nor hold it against him in any way. The trial court also fully instructed the jury that the burden of proof was on the state and that Nelson was presumed to be innocent. Accordingly, the strength of the evidence against Nelson and the context in which the improper statement was made renders the error harmless. See *Taylor v. State*, 272 Ga. 559, 562 (2) (d) (532 SE2d 395) (2000); *Barnes v. State*, 269 Ga. 345, 352 (12) (496 SE2d 674) (1998); *Taylor v. State*, 254 Ga. App. 150, 152-153 (3) (561 SE2d 833) (2002); *Fairbanks v. State*, 244 Ga. App. 123, 126 (3) (534 SE2d 529) (2000), disapproved on other grounds, *Handschuh v. State*, 270 Ga. App. 676, 681 (1) (607 SE2d 899) (2004); *Cloud v. State*, 235 Ga. App. 721, 723-724 (6) (510 SE2d 370) (1998).

4. Lastly, Nelson contends that the trial court erred in admitting certain testimony from the state's expert witness, Denisa Millette, because she was an unlicensed psychologist. See Ga. Comp. R. & Regs. r. 510-10-.01. Nelson's claim is meritless.

> This Court has repeatedly held that it is a matter within the sound discretion of the trial judge as to whether a witness has such learning and experience in a particular profession as to entitle him to be deemed prima facie an expert. To qualify as an expert, generally all that is required is that a person be knowledgeable in a particular matter; his special knowledge may be derived from education as well as study, and formal education in the subject is not a requisite for expert status.

(Citation omitted.) *Vasquez v. State*, 241 Ga. App. 512, 513 (2) (527 SE2d 235) (1999).

Millette interviewed and evaluated C. W. for the purpose of determining whether certain of his behavioral patterns were consistent with that of a child who had been subject to sexual abuse. Prior to testifying, Millette disclosed that she had a master's degree in clinical psychology and had been trained by the Georgia Center for Children in assessing child abuse allegations and in evaluating children who might have been sexually abused. At the time that she interviewed C. W., she was employed at the Medlin Treatment Center, a treatment facility that specializes in psychosexual and

sexual trauma evaluations. In addition to conducting evaluations, she also provided therapy for sexually abused children and for sex offenders. Millette testified that she had interviewed approximately 350 children at the Medlin Treatment Center and had interviewed approximately 1,000 physically and sexually abused children with her previous employer. At the time of trial, Millette was working under the supervision of Dr. Medlin as part of her one year post-master's degree residence program required to obtain licensure under OCGA § 43-10A-7.

Millette was tendered without objection as an expert in the evaluation of sexually abused children, but Nelson contends that she should have been prohibited from testifying to the results of her clinical interview and evaluation of C. W. because she was not actually licensed as a psychologist. Georgia law carves out an exception to the licensing requirements of professional counselors for those persons who, like Millette, have obtained the requisite education for licensure but are practicing under supervision in order to obtain a license. OCGA § 43-10A-7 (b) (5), (6). See also Ga. Comp. R. & Regs. r. 510-10-.01 (citing OCGA § 43-39-7). The trial court did not abuse its discretion in allowing Millette's testimony.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED JUNE 16, 2006.

*Gerald P. Word*, for appellant.

*Peter J. Skandalakis, District Attorney, Anne C. Allen, Stephen M. Gray, Assistant District Attorneys*, for appellee.